## BIRDSALL v. LEAVITT et al.

No. 1796.   Decided March 8, 1907 (89 Pac. 397).

1. DEEDS—EVIDENCE—SUFFICIENCY. In an action to set aside a deed for want of mental capacity of the grantor, evidence *held* to show that at the time the grantor executed the deed she was mentally incompetent.

2. SAME. In an action to set aside a deed, evidence *held* to show that its execution was procured by duress, warranting its cancellation.

3. SAME. In an action to set aside a deed, evidence *held* to show that the delivery thereof was without the grantor's assent.

4. SAME—VALIDITY—UNDUE INFLUENCE. Where the execution of a deed was procured through undue influence, and a delivery was made without the grantor's assent, it is none the less invalid by reason of the fact that the grantees may not have been concerned in nor had any part in the transaction.

APPEAL from District Court, Sevier County; John F. Chidester, Judge.

Action by Cora Birdsall, an insane person, by Isaac Birdsall her guardian, against James E. Leavitt and another. From a judgment for defendants, plaintiff appeals.

REVERSED AND JUDGMENT DIRECTED.

*E. E. Hoffmann* for appellant.

*J. H. Erickson* and *H. N. Hayes* for respondents.

FRICK, J.

This action was instituted by Isaac Birdsall, as guardian of Cora Birdsall, an insane person, to set aside and cancel a pretended deed of conveyance made by said Cora Birdsall. The complaint sets forth two grounds upon which the relief is sought, namely, insanity and undue influence. The defense was practically a denial of both the insanity and undue influence, and an allegation that the defendant paid $100 with other valuable consideration for said conveyance, which was a fair and full consideration therefor. There are other averments in the answer, but in view that the court found only upon the two issues, namely, the insanity and undue influence, those averments are immaterial.

The court found that on the 11th day of June, 1904, Cora Birdsall, for the sum of $100 and other valuable consideration, conveyed to the defendant James E. Leavitt by warranty deed certain lands, describing them; that at the time of executing said deed she was of sound mind and legally competent to make, execute, and deliver the deed in question; that the same was duly delivered on or about the said 11th day of June, 1904, to the defendant Leavitt by said Cora Birdsall; that at the time of the execution and delivery of said deed no undue influence was exercised or used in any manner, nor was there any fraud or coercion practiced by any one; that since the execution of said deed, to wit, on or about August 3, 1905, said Cora Birdsall was duly adjudged to be insane, and was committed to the State Mental Hospital at Provo, Utah, for treatment and care. Upon substantially the foregoing findings the court made conclusions of law that the defendants were entitled to a judgment for "no cause of action," and entered judgment accordingly against plaintiff, from which this appeal is prosecuted.

The assignments of error are numerous, and stated in various forms. It is sufficient to say that they attack the findings and judgment, without specifying them separately. A careful perusal of the evidence contained in the record leads to but one conclusion, which is that the findings and judgment cannot be sustained.

The evidence is quite voluminous, and to set it out would require too much space. We will therefore content ourselves by a brief statement of what we deem to be the uncontroverted facts, quoting from the evidence only as much as will illustrate some particular fact or facts. The physician who treated Cora Birdsall was called as a witness, and testified as an expert from what he learned from personal observation of his patient. He in substance testified that Cora Birdsall suffered from a mental breakdown, that her mental disease was hereditary, and that it had been in progress for at least a number of years prior to the time the deed was signed, and was in active progress at that time, and that she at that time, in his judgment, was mentally incompetent and wholly incapacitated from making a deed. Her relatives testified to substantially the same effect, basing their statements upon actual observation and contract with Miss Birdsall. They described her conduct and deportment, all of which clearly tended to show that she was irrational and had been in such condition for a long time prior to the making of the deed — worse at times, better at other times. There is no evidence against this, except the conclusions of some of her neighbors, none of whom giving any specific data on which their conclusions are based, and being nonexperts, their testimony is thus entitled to but little, if any, weight, regardless of their good motives or veracity.

The clear weight of the evidence, in view of the fact that Cora Birdsall was suffering from an hereditary mental disease which in the following year culminated in her entire mental breakdown and caused her to be adjudged insane and placed in a mental hospital, where she remains, is to the effect that she, at the time she executed the deed, was mentally incapacitated and therefore incompetent to make the same. It however, further appears without contradiction, and from the witnesses testifying on behalf of the defendants, that Cora Birdsall did not make the deed of her own free will. The matter leading up to the making of the deed was a long drawn out affair, and had gone through about all the so-called church courts, all of which had decided against her.

and finally, upon her refusal to comply with the decision of the church authorities, she was excommunicated or disfellow-shipped, and thereby lost her membership and standing in the church. It is manifest from this record that it was for the purpose of her reconciliation with and to regain her standing in the church that she signed this deed. To bring about this, bishops and elders were called in to administer to both her spiritual and physical wants, as they all declare; and to gain the object in view they all solicited and advised, some of them even importuned, her to sign the deed. The key to the whole situation as it really existed is best stated in a few words from a witness for the defense, Simony Christensen, who says: "I was present when the deed in question was sign-ed. Those present were Virginius Bean, John W. Coons, Bishop Coons, A. G. Young, I believe Paul Poulsen and Mor-ten Jensen were there, and Cora and Mrs. Taylor. . . . When we got there she seemed to be quite troubled in her mind and feeling distressed; she was expressing herself some-thing like this: 'Why was I so foolish as to refuse to comply with that decision?' . . . We told her that she need not trouble herself so much about that, that if she wished to com-ply with that decision now she had the privilege, and by doing so she could gain her fellowship in the church. . . And dur-ing our conversation, some one—it may have been me—made the statement, 'If you think more of that land than you do of your standing in the church, that, of course, will make a dif-ference,' to which she answered emphatically, 'I care nothing for the land, only that I may get to feel as I did before.'" The record teems with this character of evidence, and it comes from the defendants' own witnesses and is not questioned anywhere. The whole tenor and effect of it all is that the consideration that she was to receive for the land was not the slightest factor in the transaction. Her friends and relatives, her spiritual advisers, all without exception, solicited, ad-vised, and some even importuned her to sign the deed as a means of regaining her standing in the church with a view to receiving spiritual and physical benefits by so doing. This, and this alone, was the moving cause for her act in signing

the deed. This was far from that free and voluntary act that the law requires in the execution of instruments. The conclusion of a cloud of witnesses that the act was, under such circumstances, voluntary and free from restraint, is of little, if any, legal effect.

The assertion that there was no actual fraud, no misrepresentation, that all concerned were moved by pure and honest motives and concerned only for her physical and spiritual welfare, doesn't rescue the act, from a legal standpoint, from being in one sense coercive. Miss Birdsall's condition of mind was such that she neither saw nor comprehended matters in their true light. She knew she was suffering and in distress. Her mental faculties were impaired by disease, and she attributed her suffering and distress to the fact that she had failed to yield obedience to the command of her spiritual advisors and had for that reason been disfellowshipped from her church. Up to the time of making the deed she was solicited to execute it by all of those present at the time, as the record clearly shows she had always insisted that the command of the church authorities was wrong and to follow it would unjustly deprive her of her property. Her act in yielding, therefore, was not based upon the consideration arising out of the transaction at all. In fact she, as clearly appears from the evidence, never had any part whatever in fixing the consideration named in the deed, or any other consideration forming a basis for the conveyance. This was entirely the act of others, and her concurrence was not even thought of, it seems. In view, therefore, of her mental condition, due to the disease which was then in progress and from which she seriously suffered, it is manifest that the act of making the deed was not her act, but that she was a mere instrument controlled by other minds. The mere physical act of signing, without her mental concurrence, is and can be of no legal effect.

If we assume, however, that Cora Birdsall was competent to make the deed and that she signed it without legal coercion or any undue influence, still this deed cannot be upheld. It appears from the evidence, without contradiction, that there

never was a delivery, either in law or fact, of the deed so as to make it a binding contract upon Miss Birdsall. To establish this we need only recur again to the testimony of what took place the following morning after the deed was signed. Mrs. Taylor, who was, as appears from the testimony, very much concerned in having the deed signed, and who called in the spiritual advisers and directed the deed to be prepared, says: "The following morning she asked me to let her see 'the thing I signed,' or 'that paper.' I first declined to get it, and she said, 'inasmuch as I signed it, you can let me look at it.' I got it, and she didn't look it over, and said, 'I will not have anything to do with this ——; I won't ever sign it.' After she did that I was afraid she was going to destroy it; then I locked it up in the writing desk and left it there until I turned it over to the bank. . . . The gentlemen that were there instructed me to hold the deed until payment was made. Cora did not instruct me to hold the deed or deliver it or to have it made. I did it on my own responsibility." She further testified that it was, about a month thereafter, delivered to the bank, Cora knowing nothing about it, nor did she know anything about the money, and that the money was never received by Cora, but that the witness used $20 of it for Cora's benefit without her knowledge or consent. While it is true that a formal physical act on the part of the grantor may not be necessary to constitute delivery, still the mind must assent to the ceremony constituting delivery in order to constitute a valid delivery and to make the deed a binding contract. This assent is wholly wanting in this case in view of all the surrounding circumstances, and therefore, for this reason, there never was a binding and enforceable contract.

But it is urged that the defendants were not concerned in and had no part or say in the transaction, and were not connected therewith by any authorized agent or agents. Let this be conceded and still they cannot prevail. If it wasn't the act of Cora Birdsall, then nothing was done, and mere innocence alone cannot make that a contract which, as a matter of law, never was such, in a case like the one at bar at least. It appears, however, that the principal defendant, and the

sole beneficiary of the deed, was not wholly innocent. In his testimony, in speaking of the church proceedings which led to the making of the deed, he says: "When I instituted proceedings in the bishop's court I believed that if I got the decision Cora would either have to abide the decision or be disfellowshipped. I knew if the decision went against her she either had to deed me the property or lose her standing in the church. I didn't take the case to the district court, because I would try her fellowship first." He wanted the deed for the land, and evidently was willing that the very methods that induced Cora Birdsall to make it should be employed. While courts always encourage amicable settlements out of court, and in all proper cases will enforce them, they never encourage coercion of any kind, and are jealous to guard the property rights of the individual against every species of encroachment. While courts do not interfere in disputes between churches and their members in respect to church or spiritual affairs, the property rights of the members will be protected as readily from church interference as any other. If, therefore, the defendant had or has any equities against Miss Birdsall, the courts always were and now are open to him. If he wants to arbitrate any differences that may exist in respect to property rights, he must at least give his adversary the right to have a voice in the selection of the arbitrator. This, it seems, he was unwilling to do, and therefore. whether viewed from the standpoint of equity, law, or morals, he is in no position to insist on the enforcement of the deed in question.

We have cited no authorities. We shall cite none since it would be a work of supererogation to do so in a case where the decision is so manifestly against the fundamental principles of both law and equity. Fairness, however, to both court and counsel requires the statement that both relied too much upon the thought that since there was no misrepresentation, no actual fraud, restraint, or active coercion, therefore there was no legal reason to set the deed aside. Both court and counsel have overlooked the fact that, if there had been such, relief would have been granted to the strongest

mind. In the mental condition of Cora Birdsall, however, that which might not have been sufficient in a stronger mind is ample to give her the relief sought.

The judgment of the court below is reversed; the court is directed to vacate and set aside its findings and conclusions of law, to substitute others in conformity with the views expressed in this opinion, and to enter a decree declaring said deed void and cancel the same, and reinstate the plaintiff in all her rights in respect to the property described in the deed, and grant her the relief prayed for in the complaint; the plaintiff to recover costs. It is so ordered.

McCARTY, C. J., and STRAUP, J., concur.