SAMUEL DICK, Conservator, Appellee, *vs.* HENRY ALBERS *et al.* Appellants.

*Opinion filed December 22, 1909—Rehearing denied Feb. 3, 1910.*

1. FIDUCIARY RELATIONS—*rule where parties occupy a fiduciary relation.* A person is said to stand in a fiduciary relation to another when he has rights and duties which he is bound to exercise and perform for such other's benefit, and in such a case he is not allowed to derive any profit or advantage from the relation between them except upon proof of full knowledge and consent of the other person.

2. SAME—*rule embraces both technical and informal relations.* A fiduciary relation exists in all cases where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the rights of the person reposing such confidence; and the rule embraces both technical and informal relations, without regard to the origin of the confidence reposed.

3. PARENT AND CHILD—*right of an adult son to purchase note against father.* An adult son living apart from his father and in business for himself has the same right as a stranger to purchase outstanding notes and mortgages against his father, and while a fiduciary relation might be established in such case by less evidence than where the parties are strangers, yet there must be some evidence, outside of the mere fact of the blood relationship, to justify a court of equity in impressing a trust upon the transaction.

4. SAME—*when mental condition of parent is not involved in a proceeding to declare constructive trust.* Where there is no question of any fraud, undue influence or breach of confidence involved in the purchase by a son of a note and mortgage against his father, the question of the father's mental condition has no bearing upon the inquiry whether the transaction shall be declared to be a constructive trust.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

GEORGE A. SENTEL, and ECKHART & MOORE, for appellants.

JOHN E. JENNINGS, and F. M. HARBAUGH, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from the circuit court of Moultrie county from a decree setting aside a deed made by the master in chancery to Arthur H. Gross and a deed from Arthur H. Gross to Susan H. Albers, and declaring a certain lease executed by said Arthur H. Gross to Henry Albers to be null and void, and requiring Henry Albers to account for the rents and profits of certain real estate to the complainant below, Samuel Dick, who filed the bill as conservator of John Albers, an insane person, against Henry Albers, Susan Albers and Arthur H. Gross. The defendants below have appealed to this court and ask a reversal upon the ground that the decree is not supported by the evidence.

The controversy grows out of the following state of facts: Prior to April, 1893, John Albers was the owner of one hundred and twenty acres of valuable farm lands in Moultrie county, on which he resided with his wife, Anna L. Albers, and their children. On the first day of April, 1893, John Albers borrowed $3200, for which he executed his note and a mortgage, in which his wife joined, upon the farm. The note fell due five years from that date. After the execution of the note and mortgage domestic troubles arose between Albers and his wife, which finally culminated in the wife and children leaving the home and in a divorce being granted to her for the fault of the husband. The evidence tends to show that there was a total estrangement between the husband and wife, and

that the children resided with and sympathized with their mother in the differences between her and their father. Henry Albers, the oldest son, seems to have especially shared his father's ill-will. John Albers continued to live on the farm and kept the interest paid on his note regularly until April 1, 1905, when he ceased paying and thereafter gave no further attention to the note and mortgage. At the October term, 1905, of the county court of Moultrie county, upon complaint of A. C. Roberts, an attempt was made to have John Albers adjudged a spendthrift and a distracted person and to have a conservator appointed for him. A trial by a jury resulted in a verdict finding that John Albers was not a spendthrift or a distracted person. After this trial John Albers returned to his farm, where he continued to live alone, as he had done for several years prior thereto.

In June, 1906, Henry Albers received a letter from the Trevett-Mattis Banking Company of Champaign, Illinois, informing him that they held a note and mortgage against his father which was long past due, and that the interest thereon due April 1, 1906, was unpaid, and asking Henry Albers to call and see them, as they desired to confer with him as to what course ought to be pursued in regard to the note and mortgage. At the time this letter was received by Henry Albers he was farming on his own account and had not had any communication with his father in regard to business matters for a number of years. In response to the letter Henry Albers went to Champaign, Illinois, and had a conference with the bankers who held the note in reference to what was best to do in order to save the farm from foreclosure and sale. He learned on this visit to Champaign that his father had neglected to answer any notices or letters that had been sent him in regard to the note. Henry Albers returned to his home, and after consulting with friends of the family it was decided to make an effort to raise the money to take up the note. Henry

Albers did not have the money of his own nor did he have the individual ability to raise it. Jacob Gross, Samuel Cox, Joe Dorjohn and Arthur H. Gross agreed to aid in raising the money. Accordingly two notes were executed, one to the First National Bank of Atwood and the other to the Bank of Pierson, on which Arthur H. Gross' name appears as principal and the other persons above named as sureties. With the proceeds from these two notes Henry Albers took up the note and mortgage from Trevett & Mattis. The transaction between Albers and Trevett & Mattis took the form of an assignment. Arthur H. Gross was treated as the assignee of the note and mortgage. After having gotten the note and mortgage out of the hands of Trevett & Mattis, Henry Albers went to see his father in the hope of getting him to make some effort to save the farm, but his father refused to do anything whatever. At the August term, 1906, of the county court of Moultrie county another effort was made, upon complaint of A. C. Roberts, to have John Albers declared insane, but the jury failed to agree and were discharged without a verdict.

At the September term, 1906, of the Moultrie county circuit court Arthur H. Gross, as assignee of the note, filed a bill to foreclose the mortgage. John Albers and his wife were made defendants. On the first day of the term of court John Albers came to the court house in Sullivan and told Mr. Whitfield, the solicitor for the complainant in the foreclosure suit, that the note had not been paid and that he did not desire to make any defense to the suit. This conversation was reported to the court by Mr. Whitfield and the court appointed a guardian *ad litem* for John Albers, who filed an answer for him and appeared before the master at the taking of the evidence. A decree of foreclosure was entered and the property was sold at a master's sale to Arthur H. Gross for the full amount of the debt, interest and costs. The sale was duly approved, and in March, 1908, the time of redemption having expired and

no redemption having been made, the master in chancery executed a deed for the premises to Arthur H. Gross. The personal notes made to the banks to procure the money to take up the Trevett & Mattis note and mortgage matured in one year from their dates. To obtain money to meet these notes at their maturity Arthur H. Gross executed a note, secured by a trust deed on the premises, to Almond G. Danforth, and afterwards conveyed the equity of redemption to Susan H. Albers, a sister of Henry and a daughter of John Albers. At the April term, 1908, of the Moultrie county court, John Albers was adjudged insane and committed to a hospital, and Samuel Dick, the complainant below, was appointed his conservator.

The bill is framed on the theory that the taking up of the note and mortgage, the filing of the bill to foreclose the same, causing the title to be vested in Arthur H. Gross and subsequently by him conveyed to Susan H. Albers, was a fraudulent scheme devised for the purpose of divesting John Albers of his title to real estate worth approximately $20,000, and also on the theory that there was a fiduciary relation existing between Henry Albers and his father, in consequence of which a court of equity will declare a constructive trust and compel the execution of the same by requiring the holder of the equity of redemption to convey it to John Albers. These contentions were sustained by the court below, and its action in so doing is assigned as error.

So far as the charge of fraud is concerned, there is no evidence whatever tending to support it and appellee virtually abandoned that contention in his brief. The burden of proving the allegations of fraud rests upon appellee, and there being no evidence offered to support such averments that phase of the case may be passed without discussion.

Appellee's main contention is that there was a fiduciary relation existing between Henry Albers and his father. The terms "fiduciary relation" and "confidential relation" have frequently been used interchangeably by courts and

law writers. In general, the relationship is one in which if a 'wrong arise the same remedy exists on behalf of the injured party as would exist against a trustee on behalf of the *cestui que trust.* (*Central Nat. Bank* v. *Connecticut Mutual Life Ins. Co.* 104 U. S. 54.) A person is said to stand in a fiduciary relation to another when he has rights and duties which he is bound to exercise for the benefit of that other person. In such case he is not allowed to derive' any profit or advantage from the relation between them, except upon proof of full knowledge and consent of the other person. The relations of attorney and client, principal and agent, guardian and ward, are familiar illustrations of fiduciary relations. The relation exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. The rule embraces both technical and fiduciary relations, and those informal relations which exist wherever one man trusts in and relies on another. The origin of the confidence reposed is immaterial. *Thomas* v. *Whitney,* 186 Ill. 225.

The whole theory of appellee on this branch of the case is, that because Henry Albers was a son of John Albers he bore a fiduciary relation to his father. There is no evidence showing that the father reposed any special confidence in his son, or that the latter undertook or assumed to act for and in behalf of his father in respect to the purchase of the note and mortgage. The evidence shows that after the note had been assigned to Gross, Henry went to see his father and advised him fully of what had been done, and gave him an opportunity, if he desired, to take some steps to protect his equity, and that John Albers wholly refused to have anything whatever to do with the transaction. It cannot be said, as a matter of law, that because Henry Albers was a son of John Albers he' thereby assumed a fiduciary relation to the latter in this transaction. The re-

lationship existing between father and son where the son is an adult and doing business for himself is not necessarily a fiduciary relation to which the equitable doctrine of constructive trusts is applicable. In such case the son would have the same right to purchase outstanding notes or mortgages against his father that any other person would, and while a fiduciary relation might be established in such case by less evidence than would be required where the parties were entire strangers, still there must be some evidence, outside of the mere blood relation between the parties, to justify a court of equity in impressing a trust upon the transaction.

The case of *Hamilton* v. *Buchanan,* 112 N. C. 470, is very much in point here. In that case William E. Horne purchased land belonging to his brother at an execution sale. The evidence tended to prove that after the purchase was made there was an agreement between William E. Horne and his father that he would re-convey the land to his brother, Burrell, upon the re-payment to him of the amount he had paid at the execution sale. The court rejected the evidence of this alleged agreement on the ground that it was void under the Statute of Frauds, and held that the mere fact of the blood relation existing between the parties did not establish a constructive trust. That case is like the one at bar also in that the defendant in execution, whose land had been sold, was subsequently adjudged insane.

In the case of *Evans* v. *McKee,* 152 Pa. St. 89, the Supreme Court of that State held that where a son purchased for $100 real estate worth $1300 at an execution sale against his father and subsequently took a deed to the premises sold, in the absence of any fraud or evidence of undue influence the title thus obtained would not be held by the son as a trustee for his father.

In the case of *Bishop* v. *Hilliard,* 227 Ill. 382, this court held that there was no fiduciary relation existing be-

tween a mother and her married daughter, and that to establish such relation evidence other than mere relationship was necessary.

In the case at bar the contention is pressed upon our attention that John Albers was of unsound mind, and it is thought that this circumstance should have some bearing upon the question involved. There is no pretense here that Henry Albers, or any other person, exercised any undue influence upon John Albers, or that his course of conduct was influenced in any degree by anything that was done or said by the son or anyone acting in concert with him. If the question of undue influence were in the case then the mental capacity of John Albers would be pertinent, but in the absence of any such claim we fail to see how that question has anything to do with the matters in issue.

Appellee relies on the cases of *Trotter* v. *Smith,* 59 Ill. 240, *Moore* v. *Pickett,* 62 id. 158, *Davis* v. *Hamlin,* 108 id. 39, *Allen* v. *Jackson,* 122 id. 567, *Myers* v. *Myers,* 167 id. 52, and *Pope* v. *Dapray,* 176 id. 478, to support the contention that there should be a resulting trust declared in the case at bar. An examination of these cases will show that in none of them was a resulting trust declared to grow out of the mere relation of parent and child. In each of them there was present some relation growing out of contract or some special confidence reposed and violated or circumstances establishing fraud. None of these cases lend support to appellee's contention.

In our opinion the evidence in this record wholly fails to support appellee's bill.

The decree of the circuit court of Moultrie county will be reversed and the cause remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*