Appeal from Fourth District

FURLONG et al. v. TILLEY et al.

No. 3155.   Decided April 5, 1918.   (172 Pac. 676.)

1. EVIDENCE—JUDICIAL NOTICE—MATTER OF COMMON KNOWLEDGE—
   CAPACITY OF EPILEPTIC.   The court will take judicial notice as a
   matter of common knowledge that one afflicted with epilepsy to the
   extent of an attack once or twice a month, is not necessarily dis-
   qualified from transacting ordinary business during the intervals
   between the attacks.   (Page 621.)

2. DEEDS—CAPACITY OF GRANTOR—SUFFICIENCY OF EVIDENCE.   In an
   action to set aside and cancel a deed for the grantor's incompetency,
   and fraud and undue influence of the grantees, evidence on the
   question of incompetency *held* to support judgment dismissing the
   action.   (Page 621.)

3. DEEDS—CONVEYANCE BY FATHER TO SONS—FRAUD OR UNDUE IN-
   FLUENCE—BURDEN OF PROOF.   Where a deed was executed to the
   grantor's son voluntarily, the relation between the parties gave rise
   to no presumption of fraud or undue influence casting on the son the
   heirs to cancel the deed.[1]   (Page 621.)

Appeal from District Court of Utah County, Fourth Dis-
trict; *Hon. A. B. Morgan*, Judge.

Action by Alice Furlong and others against Alma C. Tilley
and others.

Judgment for defendants.   Plaintiffs appeal.

AFFIRMED.

*Parker & Robinson* for appellants.

*Elias Hansen* for respondents.

APPELLANTS' POINTS.

"In order to show a conveyance invalid on the ground of
mental incapacity it is not necessary to show insanity or

---

[1]*Hatch* v. *Hatch*, 46 Utah, 218, 148 Pac. 433.

idiocy, but a mental deficiency justifying a conclusion that the grantor did not exercise deliberate judgment is sufficient.''

''It is not necessary in order to prove undue influence, that the mind shall be shown to be so weak as to render the person upon whom the influence is exercised incapable of attending to ordinary business.'' *Ormsby* v. *Webb,* 134 U. S. 47, 33 L. Ed. 805.

See also the following cases:

*Moore* v. *Moore,* 56 Cal. 94; *Jones* v. *Thompson,* 5 Del. Ch. 391; *Ashmead* v. *Reynolds,* 134 Ind. 144, 33 N. E. 764; *Yount* v. *Yount* (Ind.), 43 N. E. 138; *Case* v. *Case,* 26 Mich. 484; *Hartnet* v. *Hartnet,* 42 Neb. 23, 60 N. W. 362; *Comstock* v. *Comstock,* 57 Barb. 453; *Hays* v. *Keer,* 45 N. Y. Supp. 1050; *Boswell* v. *Boswell* (Ky.), 45 S. W. 254; *Crossant* v. *Beers,* 118 Ill. App. 502; *Smith* v. *Snowden,* 96 Ky. 32, 27 S. W. 855.


THURMAN, J.

This is an action to set aside and cancel a deed for land situated in Spanish Fork, Utah County, executed by one Henry Tilley, hereinafter for convenience called the grantor. The deed was made to defendant Alma C. Tilley.

The complaint, in substance, alleges that the grantor died in November, 1915, but that on December 8, 1911, he is purported to have made the deed in question; that at that time he was mentally incompetent and unable to transact ordinary business; that the defendants, taking advantage of his weakness of mind, by fraud and undue influence, wrongfully procured the deed to be made; that the deed was made without consideration. Defendants controvert these allegations of the plaintiffs, and further allege, in effect, that the defendant Alma C. Tilley paid part of the purchase price of said land; that in 1907 he was arranging to leave the state of Utah, whereupon the grantor and his wife entered into an oral agreement whereby they agreed that if the defendants would remain at home and cultivate the land in question and other land belonging to the grantor, the said grantor and his wife would convey the land in question to the defendants in such form that the title thereto would vest in them upon the death of the

said grantors; that the said defendants accepted the terms of said agreement and fully complied therewith; that the deed sought to be canceled was made in pursuance of said agreement, and at the time it was executed the defendant Alma C. Tilley and his wife duly executed a written lease for a life estate in said premises and delivered the same to the grantor. Other matters are set up in defense, but they are immaterial. Plaintiffs sue as heirs of the said grantor. The administrator, who refused to join as a plaintiff, is made a party defendant. The trial court, sitting without a jury, found the issues in favor of the defendants. Plaintiffs appeal.

Several errors are assigned relating to the admission of testimony, motions to strike out portions of the answer, rulings of the court thereon, and error in the findings. All of said rulings except as to the issues of fact were either proper or nonprejudicial, and will not be further considered.

The only questions necessary to be determined are: (1) Was the grantor mentally incompetent to convey his property at the time the deed was executed? (2) Was he unduly influenced thereto by the defendants? Upon these issues many witnesses—about an equal number—were sworn and examined on each side of the case. The witnesses were all neighbors of the grantor, Henry Tilley, in his lifetime, and many of them were his relatives by consanguinity or affinity. All the parties to the action are his lineal descendants and heirs at law, his wife having died in June, 1911.

The testimony on the part of the plaintiffs tended to show abnormal conduct, strange behavior and eccentricities on the part of the grantor, indicating weakness of mind, imbecility and mental aberration, some occurring before the deed was executed, December 8, 1911, but most of it after. As samples of incidents related by the witnesses for plaintiffs, the following may be mentioned: He was known to go to town in his buggy and come home without it: tried on one occasion to put on baby shoes in the presence of the family; had a curious expression in his eyes; sometimes commenced eating dinner before other members of the family were ready; after eating dinner would crack and eat cherry stones; sometimes got lost

in the community where he lived; once said he did not care
to live any longer; once at a conference in Salt Lake City he
sat on the curb and put his feet in the water, saying he did
so to cool them off. He was a Republican in politics, and once
when talking to a witness who was a Democrat, said, "God
will take care of the Republican party"; on one occasion he
did not know his wife's sister; asked one witness about the
health of his mother-in-law who had been dead for five years,
grantor was well acquainted with her. On one occasion he was
on the ground floor of a house and insisted he was upstairs;
sometimes wandered around. His wife died in June, 1911.
After that he frequently visited the cemetery and was seen
crying. He was 69 years of age when he died, in November,
1915. Some of the plaintiffs' witnesses testified to instances
occurring as early as 1908, but all agree he was much worse
after his wife died. Deceased was subject to epileptic fits,
which occurred generally about once a month, sometimes twice
a month in later years. During these fits and for a short time
after it is admitted he was incapable of transacting business.
At all other times they insist his mind was normal, at least up
until August, 1914. After that they noticed a marked change
for the worse in his mentality.                                  .

The testimony introduced by defendants tended to show
that the grantor transacted business with other people at or
about the time the deed in question was executed; that he
sold land and executed deeds therefor; transferred water
rights, conveyed lands to the plaintiffs, long after executing
the deeds to the defendants; that plaintiffs still hold the deeds;
that his conduct was generally normal down to 1913 or 1914,
the testimony varying in that respect. He attended church
regularly until 1914. Defendants' witnesses saw some changes
as time went on, but were of the opinion he was competent to
transact business in 1911; told several witnesses he had turned
the land over to the boys. Witnesses talked with him about busi-
ness matters as late as 1913 or 1914, and saw nothing unusual
in his demeanor. Defendants' testimony also tended to show
that both of the defendants, before the deed was executed,
contemplated ·leaving Utah, and in consideration of their

remaining at home and cultivating the farm grantor promised to execute the deed in question. The testimony tends to show the grantor lived at the home of defendant Alma C. Tilley for two or three years after the deed was executed; that Alma had no farm prior to this conveyance; that he had a wife and nine children, and the other defendant, James Tilley, had a wife and four children; that Alma had assisted in paying for the farm, and that after the deed and life lease were executed defendants paid to the grantor, as rental, a substantial sum per annum. The testimony further tends to show that the deed was recorded soon after it was made, and that some of the plaintiffs had actual knowledge of its execution several years before the grantor died; that no question was ever raised by any of the plaintiffs concerning the validity of the deed until after the grantor's death. The foregoing, in substance, constitutes the facts upon which the trial court based its judgment.

· It does not appear from the evidence that the eccentricities above enumerated, introduced to show the grantor's incompetency, reflected his mental condition at all times. 1, 2, 3 They appear to be more in the nature of isolated occurrences of mental aberration. It is admitted, as before stated, that when the grantor was under the influence of an epileptic fit, to which he was at times subject, he was unable to transact business. We believe it is a matter of common knowledge, of which the court will take judicial notice, that where a person is so afflicted to the extent appearing in the record before us, he is not necessarily disqualified from transacting ordinary business during the intervals between the attacks. This, perhaps more than anything else, accounts for the apparent conflict in the opinions of the various witnesses. Those who happened to see the grantor in one of these attacks, or soon after, would notice something abnormal in his demeanor or conversation, while those who saw him only in the intervals would notice nothing unusual. As to the incidents themselves, while many of them are exceedingly peculiar, they are not by any means conclusive. His going to town in the buggy and returning without it, unexplained, certainly indicates absence of mind. His trying to put on baby shoes, perhaps in the pres-

ence of his little grandchildren, might be for their amusement only, or it might indicated mental aberration at the time. His sitting on the curb and putting his feet in the ditch to cool them off was not unnatural or abnormal; it may not have been according to ethics under the circumstances. His wandering around at times through the town may or may not indicate abnormality. His saying to a Democrat in argument that "God would take care of the Republican party" to the Democrat may have suggested the rankest kind of imbecility, but this court as a whole cannot accede to that view. His failure on some occasions to remember names or persons with whom he was familiar is, perhaps, a common failing of many persons as they advance in years. We cannot say that such evidence is even persuasive that such persons are incompetent to transact ordinary business. We might continue these comments until every incident related has been reviewed and criticized, but it would not answer any useful purpose. The fact remains that all the evidence in the record relating to the transaction itself indicates that at the time the deed was executed he was in a normal state of mind; that the execution of the deed was in pursuance of an oral agreement and a fixed and settled determination on his part, expressed in various forms to disinterested witnesses as well as to those interested; that the defendants were his sons, with large families and no land to cultivate; that his daughters were married off and were not residing under his roof; that he desired to keep his boys at home and made the agreement referred to with that end in view. In making the agreement he did not overlook his own interest, but reserved a life estate in himself. It also appears he did not forget his other children and grandchildren. They are the plaintiffs in this action. He conveyed property to them long after the deed to defendants was executed. They still hold the property so conveyed. Whether it is equal in value to the property conveyed to defendants, or less, is not a controlling question. The questions are, as stated in the beginning: Was the grantor incompetent to convey his property when the deed was executed? and was the deed obtained by fraud or undue influence on the part of the defendants? The

trial court decided both questions in the negative and entered judgment for the defendants, dismissing the action. We are of the opinion that the evidence preponderates in favor of the judgment. The rule contended for by appellants, that the burden was on the defendants to show that the deed was not obtained by fraud or undue influence, does not apply in this kind of a case. *Hatch* v. *Hatch*, 46 Utah, 218, 148 Pac. 433, and cases cited.

For reasons above stated, the judgment of the trial court is affirmed; respondents to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.