### FROYD v. BARNHURST et al.

No. 5236. Decided January 4, 1934. (28 P. [2d] 135.)

*J. M. Foster*, of Cedar City, and *Wm. B. Higgins*, of Fillmore, for appellant.

*Badger, Rich & Rich,* of Salt Lake City, *Erickson & Erickson,* of Richfield and *Morris & Matheson* of Cedar City, for respondents.

HARRIS, District Judge.

Plaintiff brought this action against defendants for the purpose of setting aside certain deeds and bills of sale in favor of defendants Hulda Barnhurst and David Sandin which deeds and bills of sale were executed by their mother Albertina Sandin. Plaintiff alleges that Albertina Sandin died April 27, 1929; that, at the time of executing the documents sought to be avoided by this action, she, June 24, 1926, was more than eighty years of age, in ill health and feeble physical condition, and was incompetent mentally to transact any business and was living with defendant Hulda Barnhurst at her home in Hatch, Garfield county, Utah. That at said time Hulda Barnhurst and David Sandin were her legal and confidential advisors. That the defendants before the execution of the said documents knew of the enfeebled condition of Albertina Sandin, and knew her physical and mental condition and knew she was incompetent to transact any business, and knew that she was susceptible or liable to be easily influenced and deceived, and knowing the large amount of property owned by her, and contriving and intending to take advantage of her weakened condition and to get from her all of her property, persuaded and by fraud and undue influence caused or procured her to execute the deeds. That at said time Albertina Sandin could not read or write the English language, and that she never knew during her lifetime that she had a cause of action against the defendants. The answer admitted that the parties to the suit were all the heirs of Albertina Sandin and admitted the execution of the documents in question, but denied the allegations as to fraud and undue influence.

A jury was called to hear the case as advisory to the court, and the court submitted to the jury four special interrogatories which, in substance, were as follows: (1)

Were the deeds obtained by undue influence? (2) Were the deeds obtained by fraud? (3) Was the deceased competent to make deeds at the time they were executed? (4) Were the deeds made without consideration? The jury answered "yes" to the first three questions and "no" to the last one. Upon motion of defendants the court disregarded the answer of the jury to the first two questions and made findings and entered judgment in favor of the defendants.

The principal assignment of error presented for review is that the court erred in refusing to follow the verdict of the jury to the effect that the deeds were obtained by fraud and undue influence and in making findings and judgment in favor of defendants.

The record is rather long and we shall not attempt to set forth a statement of the evidence, but make the following brief summary of the facts appearing from the record: At the time of her death Mrs. Sandin had been a widow for about twenty years. Her husband prior to his death deeded all of his property to the four children of himself and Mrs. Sandin, being the parties to this action, except that plaintiff's mother was then alive and was one of the four children. Not long after their father's death each of these children, including plaintiff's mother, conveyed their respective tracts of property to Mrs. Sandin. Later on she sold the property deeded to her by her daughter Mrs. Froyd (plaintiff's mother) to the Froyds. What Mrs. Sandin received for that property is not disclosed by the record, but one or two witnesses testified that they had been told by Mrs. Sandin that the Froyds had received their share of her property. Mrs. Sandin first made a will giving her property in undivided fourth parts to her three living children and one-fourth to the children of Mrs. Froyd, the deceased daughter. Later on and prior to 1925, Mrs. Sandin made a second will in which she devised all her property to her three living children, David Sandin, Joseph O. Sandin, and Hilda Barnhurst, with the exception of a small cash bequest to plaintiff and his two sisters. The record does not dis-

close that either of the above children had anything to do with the preparation or execution of this second will. Mrs. Sandin lived in Cedar City. Mrs. Barnhurst and Joseph O. Sandin lived in Hatchtown, and David Sandin lived in California. Neither David nor Joseph had anything to do with the making of the deeds in question. Prior to 1925, Mrs. Sandin lived alone, but about that time, because of her age and being large and having difficulty in getting around, on advice of friends, she decided to live with her children. For a while Mrs. Barnhurst lived at her mother's at Cedar, but, this being inconvenient, Mrs. Sandin went to Hatchtown to live, and at times returned for short periods to Cedar. For many years Mrs. Sandin attended to her own business. She owned and rented business property, loaned money, sold and transferred property. She could not read or write English, but she could talk it fairly well, and she was bright and intelligent. On June 19, 1926, she went with her daughter, Mrs. Barnhurst, to Cedar, and they went to the office of one Dalley, an abstracter, and employed him to prepare the deeds and bills of sale. On June 25th, J. C. Barnhurst went to Cedar to get his wife and her mother and was sent to the office of Mr. Dalley to get the documents. They were not finished. Mr. Dalley was busy, but asked Mr. Barnhurst to find out just how Mrs. Sandin wanted to divide the business property. Mr. Barnhurst did not know, but went and got this information from Mrs. Sandin and reported to Mr. Dalley. It was late at night when Mr. Dalley completed the documents and took them to Mrs. Sandin's home. Each document reserved a life estate in Mrs. Sandin. Mr. Dalley did not read them all to her in detail, but explained to her the contents of each document, whereupon she executed the same before him as a notary public. Dalley took the documents back to his office and later delivered them to Mrs. Barnhurst at the written request of Mrs. Sandin and they were duly recorded in September, 1926. At the time of the execution of these deeds and bills of sale the second will was revoked.

On several occasions before the deeds were made she told friends how she expected to leave the property to her three children, and after the execution of the instruments she informed neighbors and friends how she had made the deeds reserving a life estate in herself, and advised two of the witnesses to fix up their property the same way. The complaint did not ask to set aside the deeds to Joseph Sandin, and, while the record is not very clear, we understand at the trial the plaintiff conceded that the only documents he wished to set aside in this trial were those executed in favor of Mrs. Barnhurst, although they were all made under exactly the same circumstances. In October, 1927, upon petition of Mrs. Barnhurst, one Parley Ipson was appointed guardian of Mrs. Sandin.

There is practically no dispute in the evidence as to the above facts. Likewise there is no evidence of any fraud practiced on the deceased, and we dismiss that matter from further consideration, except in so far as it may be involved in the matter of "confidential relationship" hereinafter mentioned.

This court is committed to the doctrine that, where it does not clearly appear by the preponderance of the evidence that the trial court was wrong in his findings of fact in equity cases, they must stand. *Hoggan* v. *Price River Irr. Co.*, 61 Utah 547, 216 P. 237, and cases therein cited.

Appellants apparently place the burden of their argument upon the proposition that there was a confidential relationship existing between defendant and her mother, Mrs. Sandin, and therefore this case is controlled by the rule that, where such confidential relationship exists between grantor and grantee, the burden is upon the grantee to show the transaction to be fair and free from fraud and undue influence. Appellant cites *Peterson* v. *Budge*, 35 Utah 596, 102 P. 211; *Birdsall* v. *Leavitt*, 32 Utah 136, 89 P. 397; *Toland* v. *Corey*, 6 Utah 392, 24 P. 190;

*Omega Investment Co.* v. *Woolley*, 72 Utah 474, 271 P. 797; also *Paddock* v. *Pulsifer*, 43 Kan. 718, 23 P. 1049, 1051.

Defendants do not complain of the rule stated and followed in these cases, but contend they have no application to the case at bar. In other words, they contend the facts here do not present a case of fiduciary or confidential relationship. Here the claim of fiduciary relationship is based upon the following evidence in addition to the fact of the parties being mother and daughter: The mother was old and feeble, could not read or write the English language; she lived with the daughter, who at one time tried to collect a note belonging to her mother without success. For a time they had the mother's money in a joint bank account in the name of both the mother and daughter, and the daughter at times collected the rent due to her mother.

This court is committed to the doctrine that the mere relationship of parent and child does not constitute evidence of such confidential relationship as to create a presumption of fraud or undue influence. *Hatch* v. *Hatch*, 46 Utah 218, 148 P. 433, 437; *Furlong* v. *Tilley*, 51 Utah 617, 172 P. 676.

In a recent Oklahoma case, *Bush* v. *Bush*, 142 Okl. 152, 286 P. 322, 325, the court says:

"Plaintiff puts great stress upon the argument in his brief that the relation of the parties (parent and child) was, in itself, sufficient to raise a presumption of fraud and undue influence, and upon that account insists that the burden was upon the defendant in this case. The rule is clearly announced in Jones Commentaries on Evidence (2d Ed.), vol. 1, § 349, as follows: 'Where the situation discussed in the preceding section is reversed, and the conveyance is from parent to child, it is at once apparent that the reason of the rule which has led to declaration of a presumption in some instances, as above stated, does not apply with equal force. Accordingly, the recent cases hold generally that no presumption of undue influence arises from the mere relation of parent and child because of a conveyance inter vivos from the former to the latter, and that the burden of showing undue influence rests on the person attempting to invalidate the conveyance.' "

In *Dick* v. *Albers,* 243 Ill. 231, 90 N. E. 683, 685, 134 Am. St. Rep. 369, the Supreme Court of Illinois, upon refusing to hold the relationship of father and son sufficient to constitute a confidential relationship, says:

"A person is said to stand in a fiduciary relation to another when he has rights and duties which he is bound to exercise for the benefit of that other person. In such case he is not allowed to derive any profit or advantage from the relation between them, except upon proof of full knowledge and consent of the other person. The relations of attorney and client, principal and agent, guardian and ward, are familiar illustrations of fiduciary relations."

In *Hatch* v. *Hatch,* supra, this court quotes with approval an Iowa case as follows:

"We have recently held that the fact that a voluntary conveyance is made from father to son while the father is residing in the son's family, even though the conveyance deprives other children of their proportionate share in the father's property, is not presumptively fraudulent, and will not throw on the grantee the burden of proving the want of undue influence. The owner of property has a right to dispose of it during his lifetime as he sees fit, even though his act may, in itself, seem to be unfair and unreasonable with reference to the interest of other children than the one to whom the conveyance is made."

And again at page 231 of 46 Utah 148 P. 433, 438, this court says:

"No general or hard and fast rule which shall govern or control in all cases can be promulgated, but every case must, to a very large extent, be determined upon the facts and circumstances present in that case."

We think the record in this case is not as strong as the records in either the Hatch or the Furlong Cases tending to show a fiduciary relationship, and that the trial court, not only did not err in finding against appellant on this issue, but the finding of the court is in clear accord with the weight of the evidence.

If it be conceded that in every case of this kind the court of equity should carefully examine the transaction for suspicious circumstances tending to show unfairness or undue influence, and where there are such circumstances

as require the grantee to clear the transaction of fraud, we see nothing in the case at bar that would require a reversal.

It is argued that there is affirmative evidence of undue influence, undisputed, because Mrs. Sandin made statements to the effect that she was not satisfied with the deeds and did not want the property deeded out of her hands. With reference to these statements the witnesses were not clear when they were made and they could have been made after her guardian had been appointed. At any rate, she never deeded the property out of her hands, but retained a life estate in the property and advised her friends to "fix up" their property the same way. We likewise feel that there was no error in refusing to find from the evidence that there was proof of undue influence.

Some other errors are assigned, but the matters raised by the same do not justify further lengthening of this opinion.

The judgment is affirmed, respondents to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., did not participate herein.