## DESERET IRR. CO. v. BISHOP et al.

No. 5837.  Decided April 8, 1937.  (67 P. [2d] 210.)

*J. A. Melville* and *A. C. Melville*, both of Salt Lake City, and *O. A. Tangren*, of Delta, for appellant.

*C. D. McNeely*, of Delta, and *C. N. Leatherbury*, of Eureka, for respondents.

MOFFAT, Justice.

Appellant brought this action in the district court of Millard county, Utah. Appellant was plaintiff in the trial court. The complaint presents the statutory short form quiet title action. The defendants filed answer denying generally plaintiff's claims, and alleging that Grant H. Bishop was the owner, in possession and entitled to possession of the premises described in plaintiff's complaint as the east half of the southeast quarter of section 14, township 16 south, range 7 west, Salt Lake meridian.

The plaintiff then filed a reply in which it is alleged that in the year 1923 a written agreement had been entered into between plaintiff and two of the defendants, William Bishop and Ray Bishop, whereby it had been agreed that plaintiff was to sell and William Bishop and Ray Bishop were to buy the lands and premises described in the complaint; that the written agreement, among other things, provided that the purchasers were to pay and discharge the taxes and assessments levied against the property.

The reply further alleges that the defendants William Bishop and Ray Bishop failed to pay the general taxes according to agreement and that the taxes became delinquent. That Ray Bishop and William Bishop entered into collusion with Grant H. Bishop, the other defendant, a son of Ray Bishop, to purchase a tax deed from Millard county, Utah, for the purpose of defrauding the plaintiff.

The defendant and respondent Grant H. Bishop filed a separate answer in which he claimed title to the land by reason of securing title from Millard county through a written agreement with Millard county for the purchase of the tax title. The tax proceedings with book and page record references are set up in detail. It was stipulated that the reply of plaintiff to the first answer should be considered also as a reply to the amended answer of Grant H. Bishop.

Upon these issues the case was tried to the court sitting without a jury.

Practically all the evidence as to title was stipulated. The oral evidence submitted related to plaintiffs claim of collusion between Ray Bishop and Grant H. Bishop.

By the stipulation the plaintiff admitted the following summarized allegations of the amended answer of Grant H. Bishop:

That on the 2d day of January, 1926, the Deseret Irrigation Company was the legal owner of the property described in the complaint. That said property was then subject to taxation in the county of Millard, state of Utah. That pursuant to law the officers whose duty it was duly and regu-

larly assessed said real property against the said owner at said time, and caused the assessment with all the necessary description and information as to value, place of residence, etc., to be entered upon the assessment rolls of Millard county. That the levy of the taxes, mailing all notices, equalization of taxes, notices of sale, and all matters relating to the legality of the said taxes were properly done. That the taxes were not paid and became delinquent. That plaintiff had been given an opportunity to pay the taxes. That the amount of the delinquent taxes with description of the property, the owners, addresses, etc., was published as required by law. That the said owner not having paid the delinquent taxes, a certificate of sale was executed and delivered to Millard county. That on the 10th day of January, 1931, the four-year period within which redemption might be made by the owner from said tax sale expired. That on the 25th day of March, 1931, the land not having been redeemed from said tax sale, tax sale certificate held by Millard county, state of Utah, was presented to the county auditor of said county and a tax deed for said land was requested. That thereupon the said auditor executed, acknowledged, and delivered to Millard county a deed conveying to said Millard county title to the said land and premises. That the deed was duly recorded. That after Millard county had taken auditor's tax certificate (deed) the board of county commissioners of Millard county, Utah, did on the 25th (5th) day of March (May), 1931, after giving statutory notice, offer for sale said property.

There were no bidders, and title remained with the county. On the 5th day of December, 1933, Millard county sold and assigned by written agreement the said property. The levying of taxes from year to year and the amount thereof for the years 1926 to and including 1933 is also admitted.

Appellant under its assignments of error argues and submits two situations:

1. It is contended that there could be no valid sale of the premises in question by Millard county, Utah. This con-

tention raises the question that there was no publication of notice for four weeks prior to the date of sale declaring that the land would be offered at the May sale. That without such notice and sale the county commissioners were without power or jurisdiction to resell the land.

Respondents contend that when two of the allegations of defendants' answer are read together it is manifest that the absence of the allegation contended for by appellant results from what is a manifest typographical error, and that the allegations properly read mean, as above indicated, where the bracketed (5th) is used instead of "25th" and bracketed (May) instead of "March." This matter was not raised in the trial court nor there discussed. The defendants' title on the basis of the claimed failure to hold a May sale is attacked for the first time in this court, and claimed to be jurisdictional.

Because of the stipulation as to admitted allegations this court has no means whereby it may determine with certainty whether or not a May sale was held. If such sale were held appellant's situation would not be aided by a return of the cause to the trial court for a new trial on that ground alone. The proof, if it existed, could easily be supplied. If such sale were not held, then how stands the situation?

Appellant, in support of its contention, has invoked section 80-10-68, R. S. Utah 1933, the last sentence of which reads:

"The board of county commissioners shall, at any time after the period of redemption has expired and before the sale as herein provided, permit a redemption from any sale where the property has been sold to the county."

That portion of the section above quoted was amended by chapter 62, Laws of Utah 1933, so as to eliminate the provision relating to "where the property has been sold to the county," thus:

"The board of county commissioners shall, at any time after the period of redemption has expired and before the sale as herein provided, permit the redemption of such property."

That it was intended to permit any person interested in the property to redeem after the four-year period of redemption had expired and until the date of the May sale from the language above, standing alone, would seem to be reasonably clear. Whether or not the authority to permit a redemption vests in any one interested in the property sold for taxes the right to so redeem at all events is not so clear.

From other provisions of the statute it appears that the period of redemption is limited to four years "after the date of sale," where the certificate of sale has been assigned. R. S. Utah 1933, 80-10-36. The opening sentence of that section uses the language, "at any time after the sale and before the time for redemption has expired" the county treasurer is required at private sale to sell and assign the interest of the county to any lienholder upon required payment and such assignee or purchaser upon presentation of his receipt to the county auditor is entitled to an assignment of the certificate of sale made to the county, and the closing sentence of the section then provides that:

"Real estate sold to the county and afterwards .assigned shall be subject to redemption as hereinafter provided, *at any time within four years after the date of the original sale.*" (Italics added.)

The four-year limitation when the certificate of sale has been assigned is further restated in section 80-10-59, infra, by making reference to section 80-10-36. Section 80-10-59, R. S. Utah 1933, as amended by Laws of Utah 1933, chapter 61, provides that,

"Real estate taken over by the county for delinquent taxes may be redeemed by any person interested therein at any time while the certificate of tax sale is held by the county, *within four years after the date of the sale*" for taxes. (Italics added.)

In the same section it is provided "that where any real estate is taken over by the county and remains unassigned" the date provided by law for redemption upon certain conditions may be extended for an additional year. There is

nothing in this case bringing plaintiff within the one additional year extension.

It is further provided that

"The county treasurer shall accept the credit on account for the redemption of property sold for delinquent taxes, *at any time prior to the expiration of the period of redemption and thereafter until the date of the public sale provided for* in 80-10-68." (Italics added.)

Then section 80-10-68, as amended by chapter 62, Laws of Utah 1933, provides that

"whenever a county has received a tax deed [and the county is not entitled to a tax deed until the four year period of redemption has expired] for any real estate sold for delinquent taxes, the board of county commissioners shall, during the month of May in each year,"

after statutory publication offer for sale each parcel of real estate which has been conveyed to the county "during the current year."

It is then provided in the same section that,

"The board of county commissioners shall, at any time after the period of redemption has expired *and before the sale as herein provided,* permit the redemption of such property."

In the case of *Hanson* v. *Burris,* 86 Utah 424, 46 P. (2d) 400, 406, this court, in interpreting the above statutes, said:

"When the period of redemption has expired and the county has received a tax deed for any real estate sold for delinquent taxes, the county tax lien merges into the title as effectively as by execution sale *with such further rights of redemption as the statute provides.* Purchasers from the county then take with a 'new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them,' " citing cases. (Italics added.)

In the Hanson-Burris Case there was no question about the regularity of the proceedings, including the holding of the May sale. It occurs to us in view of all the provisions

of the statutes that the status of one interested in land as an owner or lienholder prior to the expiration of the four-year redemption period, or prior to the county taking deed to property sold for taxes, is a redemptioner as a matter of right. After the county takes deed to the property, the tax proceedings being regular, the status of a former owner or lienholder has in some way been changed, and he is not a redemptioner as previously understood he was before the county had taken auditor's deed to the property. His status even if designated "redemptioner" must have changed after the execution of deed and upon expiration of the four-year redemption period. May it then be said he is a permissive redemptioner until the date of the May sale, or if he permits the time of the May sale to go by and the county sells to another is he then in position to complain? Or may it be said it was the intention of the Legislature in event the county officers failed in their duty to hold the May sale that the county lost its right to sell and the redemption period was indefinitely extended? The county is expected to sell and get the property again upon the assessment rolls. Not only the county but all other taxing units are interested that property should bear the burden of taxation for governmental support. We need not pursue the questions or the discussion.

In the instant case, the plaintiff is in no position to complain as to whether or not a May sale was held. No attempt to redeem or to secure permission to redeem or to exercise a right of redemption is either pleaded or proved. No suggestion is made that any tender has been made either to the county or the purchaser from the county. Plaintiff is not in a position to complain having by stipulation agreed that the county had taken deed after the expiration of the four-year period, and thereby, if effect is to be given to the deed to the county, divested the owner of title. Under the stipulated facts plaintiff is not in position to argue he has the better title.

All of appellant's assignments of error go to two propositions. They are the one just disposed of and the other is:

2. "That under the state of facts proven at the trial the same constitute a fraud against the plaintiff," and that the pretended and attempted purchase of the land by Ray Bishop in the name of his son constitutes only a redemption which he holds in trust for plaintiff, and is not a purchase of the land.

After alleging the course of dealing between William Bishop and Ray Bishop as to the contract to purchase the land from plaintiff the default and sale for taxes, it is alleged:

"That after the issuance of the said tax deed to Millard County, Utah, as aforesaid, the said defendant Ray Bishop, with the deliberate intent to cheat and defraud this plaintiff out of the said land * * * caused the agreement [with Millard County] to be made to run to one Grant Bishop," a son of Ray Bishop.

It is further alleged that all of the dealings by Ray Bishop, in the name of Grant Bishop, with Millard county were with the deliberate intent to cheat and defraud the plaintiff; and that Ray Bishop in securing the sale contract from Millard county was the agent of Grant Bishop.

If the allegations could be said to be sufficient to charge Ray Bishop with fraud, the allegations fail to charge Grant Bishop with being a party participant in the alleged fraud, but if such were conceded the allegation and proof were submitted to the trial court. The court permitted plaintiff to submit evidence relating to the whole situation. The court found against plaintiff. We have carefully read and compared all the evidence found in the transcript and after painstakingly weighing all the evidence in the record find no error in the findings of the court.

Upon the issues we are required to support the findings and judgment of the trial court. Judgment affirmed. Costs to respondents.

HANSON and LARSON, JJ., concur.

WOLFE, Justice (concurring).

I concur, but shall state my own reasons for so doing. The answer of Grant H. Bishop alleges, among other matters, that the county took auditor's deed on March 25, 1931, and that after the county took said deed, the commissioners "did on the 25th day of March, 1931, after giving statutory notice, offer for sale at the front door of the County Courthouse at Fillmore, Utah, the said land," etc. Counsel for plaintiff, by stipulation, admitted all of the allegations of the answer up to and including the above-quoted portion. Counsel, I think, did not mean to question the regularity or validity of any of the tax procedure including the allegation of a purported May sale which, by the allegation above quoted, appeared to have been had in March. I think counsel simply desired to place in issue the matter of whether it was not in legal contemplation, Ray Bishop purchasing this land. Neither the prevailing nor the dissenting opinions in the case of *Hadlock* v. *Benjamin Drainage District,* 89 Utah 94, 53 P. (2d) 1156, 107 A. L. R. 876, were inconsistent with the principle that the purchaser of the tax title could not circumvent his mortgagee, and, therefore, what in this case is equivalent to a mortgagee, the vendor on an installment contract to sell. If Ray Bishop was using Grant Bishop to buy this land, he would come under this principle.

However, now plaintiff in effect contends that the stipulation admitted that the May sale was made on the 25th of March and that, therefore, it admitted a fact which would show the so-called sale not legal, because not held in May. This can be the only irregularity because it was admitted by the stipulation that the sale was held *"after giving the statutory notice."*

Let us assume the so-called May sale was made in March and therefore premature. Let us further assume for the sake of argument that the doctrine laid down in the case of *Utah Lead Co.* v. *Piute County,* 92 Utah 1, 65 P. (2d) 1190 (where there was a complete absence of the May sale),

applies and that the sale to Grant Bishop is therefore void. What is the real effect then of this supposed invalidity of the sale to Grant Bishop? The county must have the title. By the stipulation it was admitted that the auditor's deed was good. What then are the rights of the plaintiff as compared to Grant Bishop? Under the supposition that there was no valid May sale and that, therefore, under the Utah Lead Case the county had no authority to sell to Bishop, the private sale made to him in December, 1933, was void. So, under this supposition, he holds a void contract of sale but has color of title. Now as to the status of plaintiff: Under the amendment of section 80-10-68, R. S. 1933, made by the 1933 session of the Legislature, which was in effect in December, 1933, the situation regarding titles held by the county through auditor's deeds had changed very materially over that theretofore existing. Not only was it mandatory on the county commissioners to permit "redemptions" after the "period of redemption" had expired (on the face, an inconsistent conception), but the county was compelled to take the bid which yielded the tax, interest, penalty, and costs for the *least* amount of the property. What became of the part not sold to regain taxes, etc., if only a part of it was sold?

It seems to me reasonable to conclude that they were intended to revert to the owner. It is doubtful whether a county can acquire title to land through tax sale except for the purpose of collecting taxes. Having accomplished that, the purpose of its ownership is fulfilled. Furthermore if the owner up to the May sale could tender taxes, interest, penalty and costs and obtain his property back, certainly it would seem sensible to conclude that the Legislature intended that if only a part of his property sold for such tax and interest, etc., the county was equally reimbursed and the remainder would revert to the taxpayer. This is quite a different situation than that which existed before the amendment of 1933. The cases of *Hadlock* v. *Benjamin Drainage District*, supra, *Hanson* v. *Burris*, 86 Utah 424,

46 P. (2d) 400, and *Utah Lead Co.* v. *Piute County,* supra, were all decided under situations which arose before the amendment. Whether the county's obtaining its taxes, etc., by the so-called "redemption" of the owner or by a sale of part of the property, worked a defeasance of the county's title as in the cases of payment of a mortgage debt under the old English law, where the mortgagee took title, or whether it gave the former owner only a preference right to buy up to the May sale, it is not necessary to determine. The result abides. The plaintiff, until a valid May sale, has a right to "redeem" or repurchase or work a defeasance, whichever conception one adopts. Consequently, it follows that we have here a case where, on the one side, the plaintiff has lost title to the county and under plaintiff's contention has a right still to "redeem" as against one on the other side who has ostensibly purchased the property from the county, said purchase being void, and yet, who having color of title, may ask as a condition precedent to the removal of the cloud on title or the county's reconveying to the former owner, that he be repaid his purchase price up to the point of taxes, interest, costs, and penalties due by the former owner, and who may have an equitable lien for such outlays. Who as between these two has the better title? As said in the Utah Lead Case, it may be impossible to apply the doctrine of *Fisher* v. *Davis,* 77 Utah 81, 291 P. 493, to this kind of a situation.

In the Utah Lead Case the county was a party, so it was possible to make an adjudication between the plaintiff, the defendant, and the county in that case as to whom had title, the county having the outstanding title. It may be that after the amendment of 1933, while an auditor's deed gives the county a technical title, the owner's right to redeem until a valid May sale may mean that, in effect, until such May sale, the county merely has a lien just as a deed intended to be a mortgage gives the mortgagee only a lien. These questions are provocative but not necessary of decision. Even under plaintiff's contention that it only stipulated that a

May sale was actually made in March and that according to its contention in law the sale was void, the proper procedure might be to send it back requiring the county to be made a party for a complete adjudication.

But I am of the opinion that we must treat plaintiff's stipulation as broad as its intent. The intent seemed to be to admit the May sale as valid and try the case on the issue as to whether Ray Bishop was not in reality the purchaser. And the case was tried on that theory. Plaintiff did not call the court's attention to the fact that it had stipulated that a May sale was made in March and that there was, therefore, no valid May sale on which to predicate a sale to Grant Bishop. In such case, defendants could have shown actually when the May sale did take place. Therefore, whatever the status of a taxpayer's property after auditor's deed and before a valid May sale under the 1933 amendment, the plaintiff on such point must fail.

Can plaintiff win on the real ground it advances, to wit, that the sale to Grant Bishop was one in reality to Ray Bishop and that an estoppel in favor of plaintiff can be urged against Ray and Grant Bishop, as set out, by the writer in his dissenting opinion in the Benjamin Drainage District Case? I have considerable doubt as to this question. But the evidence of collusion between Grant and Ray Bishop being conflicting and the question being in doubt, I think it must rest as found by the trial court, even though an equity case. *Hanson* v. *Mutual Finance Corp.*, 84 Utah 579, 37 P. (2d) 782; *Wasatch Livestock Loan Co.* v. *Lewis & Sharp,* 84 Utah 347, 35 P. (2d) 835; *Froyd* v. *Barnhurst,* 83 Utah 271, 28 P. (2d) 135; *Croft* v. *Jensen,* 86 Utah 13, 40 P. (2d) 198; *Hoggan* v. *Price River Irr. Co.,* 61 Utah 547, 216 P. 237; and numerous other cases.

Where, after reading the testimony, we remain in doubt, then the conclusion of the lower court is placed on the scales and it will weigh in favor of an affirmance. That is the situation in this case. For these reasons, I concur.

FOLLAND, Chief Justice (concurring).

With respect to the first ground urged, my concurrence is based on the fact that no issue was made as to any failure to allege and prove the offering of the property at a May sale. On the contrary, the stipulation of evidence was to the effect that the statutory notice for such sale was given, although the date of the sale was alleged and stipulated as of March 25th, obviously an erroneous date. If the statutory notice was given, the sale date could not have been March 25th. That is the date the county obtained the auditor's deed. The question is raised for the first time in this court, and because of the stipulation and the failure to point out the erroneous date in the trial court, appellant is in no position to now complain.

The cause was tried on the issue of alleged fraud in the purchase of the land from the county. As to that issue I fully concur in the decision.