ROXANNA SCOTT *et al.*

*v.*

RACHEL A. HARRIS *et al.*

*Filed at Springfield March 30, 1885.*

1. PRIVILEGED COMMUNICATIONS — *as between attorney and client— effect of death of the latter.* Although statements made by a party to his attorney and legal adviser are privileged when offered in evidence against the client, if living, they are not privileged after his death, in an inquiry to ascertain, as between his devisees under his will and a grantee claiming under his deed made after the will, as to what he intended by his deed.

2. But when the rights and interests of the client, and those claiming under him, and third persons, come in conflict, the privilege of communications to his attorney is not removed by the client's death. In cases of testamentary disposition the rule seems to be otherwise.

3. SAME—*effect of disclosure by the client himself.* The privilege of secrecy as to communications to an attorney, is that of the client alone; and if the latter chooses to disclose what is communicated to his legal adviser in professional confidence, there is no rule of law to prohibit it.

4. Where a party, after communicating to and advising with her attorney as to certain conveyances of land, directs him to inform the legatees under her husband's will that the deeds to her from her husband, made subsequent to the execution of the will, had only been made to enable her to preserve the estate, and that if anything was left after the payment of the debts it was to be divided in accordance with the provisions of the will, and the attorney makes the communication to the legatees, such communications will not be privileged. The admissions and statements of the attorney under such circumstances are the admissions and statements of the client.

5. TRUSTS—*whether within the Statute of Frauds—of express and implied trusts.* If a husband conveys his lands to his wife upon the express trust to enable her to better manage and preserve his estate, and to be applied by her in accordance with the provisions of his will, before made, and she agrees to carry out the trust, the same will fall within the Statute of Frauds if not created or evidenced in writing, and can not be enforced if the defence of the statute be interposed.

6. But where a trust arises by implication, construction or operation of law in respect to land, the legal title to which is obtained by a wife by a conveyance from her husband in consequence of undue influence over his mind, and by false representations, it is not within the Statute of Frauds, though not evidenced in writing.

7. SAME—*of fraud to take case out of the statute.* The mere refusal of a trustee to execute an express trust, or the denial of the existence of the trust by him, does not constitute such fraud as will take the case out of the Statute of Frauds.

8. SAME—*effect of an admission in an answer as showing a trust.* On a bill by the adult heirs and devisees of a deceased testator, against the widow and infant daughter of the testator, to establish that a conveyance by him to the widow, shortly before his death, was made upon an express trust for the benefit of his devisees and legatees, the widow answered the bill, and alleged that "the conveyances were made by the deceased with the intention of changing the effect of his will, and providing for this defendant and her infant daughter, Laura:" *Held,* that such clause in the answer was not an admission by the widow that she took and held as trustee by the conveyances, but showed an absolute gift to her for an admitted motive or reason.

9. SAME—*of the particular case—whether there is shown an intention of a grantor to create one.* In this case the facts and circumstances connected with a conveyance by a husband, shortly before his death, to his wife, are stated, and held not sufficient to show an intention on his part to create a trust in his wife, but as showing an intention to make a provision for his wife and infant daughter.

10. AMENDMENT *of answer in chancery, pending the hearing—to set up the Statute of Frauds.* It is a matter of discretion to allow a defendant in a chancery suit to amend his answer even after the evidence has been heard, by setting up the Statute of Frauds, as against mere oral declarations and admissions of a trust, in respect to lands. If the complainant is not prepared to meet the new issue, and needs time, he should present an affidavit of that fact, and ask for an extension of the time for the hearing.

11. ALLEGATIONS AND PROOFS *should correspond.* On a bill framed to have a trust established in respect of lands, to remove the trustee, and for an account, etc., the complainant can not show that the conveyance to the alleged trustee was executed as a mortgage, to secure the grantee against loss, etc.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. GEORGE S. WILLITS, and Mr. ALEXANDER S. BRADLEY, for the appellants:

The Statute of Frauds was not pleaded or attempted to be set up in apt time. *Carpenter* v. *Davis*, 72 Ill. 17.

The conduct of the widow in keeping the children of her husband away during his last illness, and in alienating his affection for them, and her refusal to converse on the subject immediately after his death, creates a strong suspicion of fraud, which, coupled with proof of her refusal to carry out an agreed trust, throws the burden of proof on her to show the transaction was a fair one, and discredits her testimony.

As to refusal to allow amendments changing the grounds of defence, or setting up unconscionable defences, see *Howe* v. *Russell*, 36 Maine, 115; *Beach* v. *Fulton Bank*, 3 Wend. 583.

Upon principle, appellee can not detail conversations herself, and where we seek to contradict her, interpose successfully the Statute of Frauds, even if regularly pleaded. *Fire Ins. Co.* v. *Reynolds*, 36 Mich. 502; 1 Wharton on Evidence, 584.

The answer of appellee is a sufficient admission of a trust. Perry on Trusts, sec. 82; *McLaurie* v. *Partlow*, 53 Ill. 340.

If the deeds were intended as a security to Rachel, against the incumbrance on her homestead, the statute does not apply. *Wright* v. *Gay*, 101 Ill. 240; *Ruckman* v. *Alwood*, 71 id. 155.

The privilege of an attorney is to protect the living, and can not be invoked when the question arises as to the intention of a deceased person in respect to the disposition of his estate. *Russell* v. *Jackson*, 9 Hare, 387; *Blackburn* v. *Crawford*, 3 Wall. 175; 1 Wharton on Evidence, sec. 591; 1 Taylor on Evidence, sec. 928.

Communications in presence of both parties are not privileged. 1 Hill, 33; 3 Barb. Ch. 528; 30 N. Y. 330; 29 Ala. 254; Wharton on Evidence, sec. 587.

An open communication from one party to another, through the first party's attorney, is not privileged. *Ripon* v. *Davis,* 2 Nev. & Man. 310.

By voluntarily going on the stand and relating her conversations with Asay, appellee waived the privilege. 1 Wharton on Evidence, sec. 584.

Mr. Theodore Sheldon, and Mr. Robert Hervey, for the appellees:

As to the degree, amount and character of evidence to establish an express trust, see *Miller* v. *Stokely,* 5 Ohio St. 194; 2 Reed on Statute of Frauds, sec. 836; *Lantry* v. *Lantry,* 51 Ill. 466.

The communications of Harris in his lifetime, and those of appellee after his death, to Asay, their attorney, were privileged. *People* v. *Barker,* 56 Ill. 299; *Wood* v. *Thornly,* 58 id. 464; *Thorp* v. *Goewey,* 85 id. 615; Greenleaf on Evidence, sec. 243.

Parol proof of an express trust was barred by the plea of the Statute of Frauds. *Lantry* v. *Lantry,* 51 Ill. 465; 2 Reed on Statute of Frauds, secs. 851, 871; *Adams* v. *Adams,* 79 Ill. 517; *Wilson* v. *McDowell,* 78 id. 518.

Mr. Henry A. Foster, for certain minor appellees.

Mr. Chief Justice Scholfield delivered the opinion of the Court:

This is a controversy between certain children and a grandchild of the first wife of Jacob Harris, deceased, on the one side, who are complainants, and his second wife, Rachel Ann Harris, one of the defendants, on the other. The complainants claim as devisees under a will made by Jacob Harris

on the 28th day of September, 1876, and Rachel Ann Harris claims under deeds delivered to her on the 1st day of September, 1877. The will makes Rachel Ann Harris executrix, and empowers her to sell and convey the real estate, as well as the personal property, for the payment of debts, and gives, after the payment of debts, to her and to her and the testator's infant daughter, Laura M., jointly, share and share alike, one-half of the balance of the estate, and to the complainants, in shares, as therein specified, the other half of the balance of the estate. The deeds convey certain real estate therein described, to one Sidwell, and from him to Rachel Ann Harris, in fee, without any words of limitation or qualification. Jacob Harris died on the 11th day of September, 1877,—eleven days after the making of the deeds,—and the will was duly probated in apt time.

The bill, as originally filed, charges, in substance, that Rachel Ann acquired an undue influence over the mind of Jacob, and then alienated his affections from the children of his first wife; that during his last illness his mind became weakened by disease, and while it was thus weakened by disease, and she had such undue influence over it, she falsely represented to him that his estate was in a bad financial condition; that she was trustworthy, and competent to manage it; that it was necessary for her to have the title to the real estate in order to handle and dispose of it to the best advantage, and that if he would place it in her name she would conserve it, and administer it in accordance with the terms and directions of the will,—all which representations are specifically alleged to have been knowingly false. It is then charged that the deeds were made solely in consequence of these false representations, and that by reason thereof a trust exists in behalf of the complainants to have the real estate held and disposed of in accordance with the terms of the will. These allegations are all denied by the answer of Rachel Ann Harris, and she claims therein that the conveyances were made freely

and voluntarily by Jacob Harris, for the purpose of investing her with the fee simple title, absolutely, in the lands therein described. Replication was filed to the answer, and evidence taken, and the cause was twice heard in the circuit court. On each hearing the court decreed that the bill be dismissed.

Some time after the bill was filed, and before the first hearing, the complainants filed an amendment thereto, wherein they alleged that the conveyances were made by Jacob Harris for the better management of the property, and to secure Rachel Ann against loss on account of her having permitted Jacob to include her homestead, which was her separate property, in a mortgage with this property, to secure a loan, which he obtained, of $50,000; and it is charged that "such was the intent of said Jacob, and the understanding and agreement of him with said Rachel, and that said deeds were obtained upon the promise of said Rachel to treat said conveyance as a trust, and by the undue influence and fraud of said Rachel." After the first hearing, the court, on petition of the complainants, ordered the cause to be re-heard, and after that order was made, and before the second hearing, Rachel Ann Harris, by leave of the court, filed an amended answer, in these words:

"And this defendant, further answering the said amended bill of complaint, says that none of the several supposed declarations or creations of trust or confidences in the said amended bill of complaint mentioned as having been made, done or created by the defendant, Rachel Ann Harris, after the death of said Jacob Harris, are, nor were, nor was, nor is, in any memorandum, or note thereof, in writing, signed by this defendant, or by said Jacob Harris, or by any other person by law enabled to declare such trusts according to the form of the statute in such cases made and provided, and known as the Statute of Frauds and Perjuries,—and therefore this defendant, by leave of court first asked and obtained for that purpose, doth interpose the said Statute of Frauds

and Perjuries to the said complainants' amended bill of complaint, and prays that the same be considered by this honorable court as though it had been fully and specially set forth by way of plea herein."

There is not sufficient evidence to maintain the allegations of undue influence and of fraudulent misrepresentation. The evidence clearly shows that the affection of Jacob Harris for the children of his first wife was warm, and that it continued until the very last—with a single exception. His son Henry W. gave him some trouble by his conduct, which caused him to be dissatisfied with him. That he was justly thus dissatisfied, seems probable, but it does not appear to have produced permanent ill-will, and there is no evidence whatever showing a perverted judgment with regard to his children, and a willful purpose to do any of them injustice. There is not a particle of proof that Rachel Ann Harris ever influenced Jacob Harris in a single business transaction, and caused him to execute her will rather than his own. There is no evidence that she ever solicited him to make these deeds, nor that he was in anywise dominated by her will. There is some evidence that she and some of the children of the first wife were not at all times on the most friendly terms of intimacy, and one or two of the daughters testify to declarations of his tending to show that he preferred that she should not know of his friendly attentions to them—at most but the manifestation of a very natural desire to avoid cause of domestic altercation, where such altercation could lead to no beneficial result. There is no evidence that Rachel Ann ever misrepresented any fact to Jacob Harris.

But, beyond the allegations of undue influence and fraudulent misrepresentation, we have seen that the bill, as amended, charges that the deeds were executed upon an express trust, and if this charge is sustained by sufficient legal proof, admissible under the pleadings, the decree below will have to be reversed.

The only witness whose evidence goes to the extent of proving that the deeds were executed upon an express trust, is E. G. Asay, an attorney at law. He testifies to certain declarations made by Jacob Harris in his lifetime, and also to certain admissions made by Rachel Ann Harris to him since the death of Jacob Harris. Different objections exist against the reception in evidence of these declarations and admissions, and they will be considered separately.

Mr. Asay was the attorney at law and legal adviser of Jacob Harris in his lifetime, and all that was said to him by Harris in regard to the execution of the deeds, and his intention in that respect, was said to him in that capacity. Mr. Asay, himself, objected to testifying to these declarations, and the counsel for Rachel Ann Harris also objected thereto, upon the ground that they were privileged communications. The chancellor admitted the evidence, subject to the objections. If Harris were himself alive, interposing the objection, counsel for complainants concede the evidence would be inadmissible, but they contend that inasmuch as he is dead, and the inquiry is simply to ascertain, as between the legatees under his will and the grantee claiming under his deeds, what he intended by his deeds, the rule for excluding the evidence does not apply. This position has support in *Russell* v. *Jackson*, 9 Hare, 387, and *Blackburn* v. *Crawford*, 3 Wall. 175, although where the rights and interests of clients, and those claiming under them, and third persons, come in conflict, the privilege is not removed by the client's death. In cases of testamentary disposition, the rule seems to be otherwise. (1 Wharton on Evidence, sec. 591.) But we can not say the court erred in not holding a trust proved, even admitting those declarations. Asay was not present when the deeds were executed. They were executed on the advice of others, of which he knew nothing until afterwards. The scrivener and one other witness are positive no trust was intended to be created; and the declarations of Harris, testified to by Asay, most strongly

tending to show the deeds were executed in trust, were made in the intervals between excruciating pains, the same night of his death, which occurred only a few hours afterwards, and when they were made, Asay says, he was totally unfit to transact business. Moreover, Asay testifies after the lapse of years, and after considerable suffering as an invalid, and he shows, by irreconcilable statements, that his memory is impaired to some extent, and that it would therefore be dangerous to rely wholly upon it in a matter of so much importance. No censure is meant to be reflected upon him, for his infirmity is a misfortune for which he is not responsible.

As to the admissions made by Rachel Ann to Asay, after the death of Jacob, it is reasonably clear that when they were made the relation of attorney and client existed between her and Asay, and if that were the only material question affecting those declarations, nothing more need be said in that regard. But the privilege of secrecy is that of the client, alone. If the client chooses to disclose what is communicated to the lawyer in professional confidence, no rule of law prohibits it. It is in evidence that several of the legatees under the will, on speaking to Rachel Ann in regard to the condition of the estate, were referred by her to Asay for information. They testify to the fact, and she admits it. Asay testifies that she directed him to inform the legatees under the will that the deeds had only been made to enable her to preserve the estate, and that if anything was left after the payment of the debts, it was to be divided in accordance with the provisions of the will, and that he made this communication to certain of the legatees. It is too apparent to need comment, that such a communication is not privileged. It is made for the express purpose of being made public. The admissions and statements of the attorney under such circumstances are the admissions and statements of the client. But the 9th section of our statute in relation to "Frauds and Perjuries," (Rev. Stat. 1874, chap. 59, p. 541,) provides that

"all declarations or creations of trusts or confidences, of any lands, tenements or hereditaments, shall be manifested and proved by some writing, signed by the party who is by law enabled to declare such trust, or by his last will, in writing, or else they shall be utterly void and of no effect: *Provided,* that resulting trust or trusts created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol." Under the bill as originally framed,—that is, seeking to establish a trust by construction, implication or operation of law, in consequence of the undue influence of Rachel Ann over the mind of Jacob, and of her fraudulent and false representations,—it would have been no defence to have alleged that the trust was not created by some instrument in writing. But, it has been seen, the bill, as amended, alleged an express trust, and to this allegation the defence that the declaration of trust is not in writing, as required by the statute, is applicable. In her amended answer, it has been shown, Rachel Ann pleads this statute, and relies upon it as a defence to any declaration of trust claimed to have been proved by her admissions made since the death of Jacob. The language of the answer is not entirely free from obscurity, but taken in connection with the amendment to the bill, to which, alone, it professes to relate, it is quite clear that it means that she interposes the defence of the statute as against the proof of a declaration of a trust contained in the verbal declarations made by her since the death of Jacob. Of course, if a trust was created here at all, it was created by Jacob in his lifetime, when the deeds were executed, since there is no pretence that Rachel Ann has, since then, by any act of hers, impressed a trust upon property that was before free of a trust. But the amended bill charges that a trust was created by Jacob, and accepted by Rachel Ann in accepting the deeds, and proof that she did so accept the deeds is sought to be established by oral declarations or admissions made by her, since the death of Jacob, that such was the

fact, and it is to these oral declarations or admissions made by her (which are but the evidences of a declaration of a trust, and not the formal declaration of a trust,) that we understand the answer to refer.   Indeed, there is nothing else to which it can refer, and, reading the answer in this sense it is specific enough, and the proof all being oral, is insufficient to establish the trust.

Counsel interpose, however, several objections to this conclusion, which demand a brief notice.

*First*—They contend that the court erred in allowing this amended answer to be filed after the proofs were all in.   The most that can be said is, this was within the discretion of the court.   If counsel were taken by surprise by the amendment, and were not prepared to meet the issue, and needed time, they should have presented an affidavit to that effect, when, doubtless, the court would have given any reasonable extension desired.   (Rev. Stat. 1874, chap. 22, sec. 37, p. 202.) The defence being expressly authorized by statute, can not be said to be inequitable, and it should not be excluded by mere technical advantages by reason of the time of pleading it. Cases might possibly arise where, in consequence of peculiar circumstances, it would be inequitable and unjust to allow it to be pleaded at so late a day in the progress of the case, but this is not such a case.   It is manifest the position of the complainants could not have been a whit better than it is, had this defence been pleaded immediately upon the filing of the bill.   The court, very clearly, did not abuse its discretion in permitting the amendment to be filed.

*Second*—It is contended, however, that even if it be conceded that the Statute of Frauds is properly pleaded, the denying of the trust by Rachel Ann, in connection with the evidence tending to prove an intention to create a trust, takes the case out of the statute.   But, in our opinion, the evidence is insufficient to show the intention to create a trust.   The mere value of the property, at the time, we do not think was

sufficient to raise a presumption that Jacob could not reason-
ably be supposed to have been willing that his first wife's
children should be deprived of all interest in it.   They were
all of mature age, and had families of their own, and none
of them were in a helpless or dependent condition.   Rachel
Ann had only a homestead as her separate property, of no
great value, and this was included in the $50,000 mortgage.
The fair conclusion, from the evidence, is, that from 1874
until the death of Jacob Harris, his property, which consisted
of real estate, depreciated in value.   When the deeds were
made, the out-look, unless to the over-sanguine, was unprom-
ising.   He had two pieces of property, (one piece known as the
Washington avenue property, and the other piece known as
the State street property,) both mortgaged,—that on Wash-
ington avenue so heavily that the mortgagees, shortly after
Jacob's death, obtained the title, on foreclosure.   The State
street property and the wife's homestead were mortgaged for
the $50,000.   There was then due unpaid interest on that
mortgage to the amount of $2000, and unpaid taxes on the
property to the amount of $1800.   Besides this, Jacob owed
debts that were unsecured, to the amount of some $4000, a
portion of which had gone to judgment.   He had been much
worried about this indebtedness, and not without reason, for
he had only $200 in money on hand, and he had vainly tried
to raise an amount to meet it, by mortgage on the property,
and if it passed into judgments which he could not satisfy,
the equity of redemption in the State street property might
be extinguished by them.   His and Rachel Ann's daughter,
Laura M., was then only nine years of age, and she was
wholly unprovided for.   The average of the witnesses does
not fix the value of the State street property above $60,000.
That it has since appreciated much beyond that amount, is
unimportant.   The case must be considered as it evidently
appeared to the mind of Jacob when the deeds were made.
There is evidence of expressions by him fixing the value of

the property at a very high figure; but these, as we under-
stand the evidence, were made more in a spirit of hopeful
reliance upon the future, than upon any estimate based upon
an ability to effect present sales. He was not then in his
last sickness, and had not, unavailingly, attempted to raise
upon it the additional sum needed to satisfy his unsecured
indebtedness. The provision for his wife and child, to be left
after extinguishing all indebtedness, could not, at best, on
the 1st day of September, 1877, have looked to him as very
large, and he must have realized that unpropitious events
might entirely destroy it. Moreover, as we have before ob-
served, the witness who was in a position best to know what
was intended by the execution of the deeds,—the scrivener,—
is positive that no trust was intended to be created. He was
the business agent of Jacob, and was consulted by him as to
the effect of the deeds. His character is not discredited, and
he stands uncontradicted. The mere refusal of a trustee to
execute an express trust, or the denial of the existence of the
trust by the trustee, does not constitute such fraud as takes
a case out of the statute. *Perry* v. *McHenry,* 13 Ill. 236;
*Lantry* v. *Lantry,* 51 id. 458.

*Third*—In the answer of Rachel Ann it is alleged that
"the conveyances were made by Jacob with the intention of
changing the effect of his will, and providing for this defend-
ant and her infant daughter, Laura," and counsel insist this
is a sufficient admission by Rachel Ann that she took and
holds as trustee,—on the authority of Perry on Trusts, sec. 82.
But this is no admission that a trust was created. (*Bryan* v.
*Howland,* 98 Ill. 625.) The motives for making a conveyance
are, quite evidently, a very different thing from the convey-
ance itself. It is entirely consistent with the motives here
declared, that the provision for the mother and daughter
should be by means of the ownership of the mother. After
his death, the duty of the nurture and support of the infant
would devolve on the mother, and during infancy, and so

long as the infant should remain with the mother, she would be, literally, provided for, by investing the mother with the title to property necessary to enable her to support and educate her. A provision, in one sense, is made for a child when the parent, its natural, legal guardian for nurture, is supplied with the means of support and education, although the use of those means is left to the discretion of the parent. It may not be entirely adequate, but still is a provision. In this admission there is no recognition of anything other than appears upon the face of the deed in respect of the ownership of the property. The property is simply given to Rachel Ann for an admitted motive or reason. The gift is absolute. No promise is exacted, and no duties are imposed, as a condition of its acceptance.

*Fourth*—Again, it is contended the evidence proves that the deeds were executed as a mortgage, to indemnify Rachel Ann against loss on account of having included her homestead in the $50,000 mortgage, and that parol evidence is admissible to establish this fact. This admits of two answers: First, the bill is not a bill to foreclose, or to redeem from a mortgage, but a bill to establish a trust, to remove the trustee, and for an account, etc.; and second, the evidence fails to prove with satisfactory fullness and certainty that such was the intention of the parties.

On the whole, we see no cause to disturb the decree below, and it is therefore affirmed.

*Decree affirmed.*