(No. 28135.—

HIRAM V. DYBLIE, Appellee, *vs.* JOHN H. DYBLIE, Appellant.

*Opinion filed January 17, 1945—Rehearing denied March 15, 1945.*

IRVING SHUTTS, of Joliet, for appellant.

BARR & BARR, of Joliet, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Plaintiff and defendant are brothers. About three years preceding their mother's death, plaintiff, for a cash consideration of $2000, assigned to defendant a part of the expectant interest he would have in his mother's estate at her death. About a year after her death, plaintiff started this suit in the circuit court of Will county. He tendered defendant the $2000 he had previously received, and prayed that the assignment be set aside and declared null and void. A decree was entered granting the prayer of the complaint. A freehold is involved and defendant has brought the record to this court by direct appeal.

The assignment, dated October 28, 1939, was signed by plaintiff under seal, and was duly acknowledged. It provided that for the consideration of $2000, receipt of which was acknowledged, the plaintiff did "(1) Hereby sell, assign, transfer and set over unto my brother, John H. Dyblie, an undivided one-half of my interest in and to the personal property of every kind whatsoever, including all shares of corporate stock, now or hereafter belonging to my mother, Anna R. Dyblie, and comprising a part of her estate and to which I am or may be entitled in expectancy or otherwise as an heir-at-law or beneficiary under the Last Will and Testament of said Anna R. Dyblie, deceased. (2) Hereby grant, bargain, sell, and convey all my right, title, and interest in and to any and all real estate owned by my mother, Anna R. Dyblie, at the time of her death and situated in the State of Illinois, hereby conveying to my said brother, John H. Dyblie, my expectant interest in the Illinois real estate my mother may own when she passes on, the homestead property at 416 Lincoln Street, Joliet, Illinois, included."

The assignment also further stated that this transfer was not a loan but an absolute assignment and that it was "for one-half my expectancy in the personal property and for my entire expectancy in the Illinois real estate belonging to my mother's estate." It contained a provision whereby plaintiff covenanted to execute and deliver such other assignments and deeds to the real estate as might be necessary to vest full and complete title in the property assigned. He agreed that after the death of his mother, he would procure a quitclaim deed from his wife to the homestead property in favor of the defendant.

Anna R. Dyblie died seized of the homestead property referred to in the assignment, and two parcels of real estate located in California. It is conceded the California real estate was not intended to be included in the instrument set forth. The personal property which the mother owned at the time of the assignment and at the time of her death consisted of 26 shares of preferred stock of the United States Steel Corporation, 125 shares of Armour and Company, preferred, and 131 shares of American Telephone & Telegraph Company stock. Her will, which was admitted to probate, was dated September 19, 1938, and gave all her personal property and real estate to her two sons, plaintiff and defendant herein, and to her daughter, Edith Dyblie Johnson, in equal shares.

Plaintiff alleged in his complaint that at the time of the execution of the assignment and conveyance he did not know of the value or extent of his mother's property, that he did not have an opportunity to ascertain the same, that defendant was acquainted with her property holdings, and that he did not apprise plaintiff of the true value but represented that her personal property was of the value of $18,000 to $20,000. Plaintiff further alleged that he did not know at the time of the execution of the assignment and conveyance that his mother owned the home-

stead property, but that he labored under the misapprehension that it belonged to his sister Edith Dyblie Johnson.

Plaintiff is a chiropractor, and in 1939 and prior thereto was engaged in the practice of his profession in the city of Minneapolis. Defendant was a dentist and practiced his profession in Joliet. The negotiations culminating in the execution of the assignment and the payment of the $2000 were made by long distance telephone, plaintiff from his home in Minneapolis and defendant and the attorney who drafted the instrument at Joliet. The agreement first reached included a sale of a one-half interest in the personal property, the real estate in Illinois and the real estate in California. After defendant counseled with his attorney, it was concluded that due to the uncertainty as to whether such a contract assigning an expectancy would be recognized under the California law, it would be better to omit from the agreement the real estate located in that State. Thereupon the attorney phoned plaintiff and told him of the advice that he had given. The inference is that the omission of the California property was met by including all of plaintiff's expectant interest in the Illinois real estate. The contract in question was prepared and sent to plaintiff at Minneapolis for signature.

The law is that where the expectancy of an heir presumptive is assigned or conveyed to another person, the assignment, if fairly made and for a valuable consideration, will be enforced in equity. The right of inheritance is not extinguished by the assignment or conveyance but still exists and whenever the interest assigned ceases to be an expectancy and becomes a vested estate the assignment is enforcible in equity. (*Thornton* v. *Louch,* 297 Ill. 204; *Donough* v. *Garland,* 269 Ill. 565; *Hudson* v. *Hudson,* 222 Ill. 527.) Plaintiff contends (a) that this assignment contract was not fairly made, (b) that the consideration was grossly inadequate, which, with other unfair dealings

practiced by defendant, renders it fraudulent and void, and (c) that it was executed during the existence of a fiduciary relationship and that the defendant has not accounted as to how he came by the property, in the manner required by law where such a relationship exists.

It is not claimed that defendant made any misrepresentations of facts in regard to the property the mother owned or its value, but rather that he omitted to disclose all that he knew about her estate. Failure to disclose important facts involved in a business transaction would, under a proper relationship, render the transaction fraudulent, so that a court of equity would grant relief against it, but this is not such a case. The first question is, did defendant have knowledge of material facts in reference to the mother's estate which plaintiff did not have and which in equity and good conscience defendant should have revealed to him? The evidence as to the family ownership of the securities involved is pertinent. Julius A. Dyblie, husband of Anna R. Dyblie, died in July, 1936, leaving a will and codicil. The will gave to the widow the entire estate if she survived the husband. The evidence is that the securities which were assets in the Anna R. Dyblie estate had come to her through the will of her husband. The various certificates of stock show they were transferred on the corporate books to Anna R. Dyblie at various times from October 26, 1936, to October 16, 1937. None of the securities were reissued during her lifetime. Another fact which bears some significance is that plaintiff knew as early as February, 1937, that his mother owned some corporate securities. During that month he was in Joliet and asked his mother for money. Plaintiff and his sister, with the mother's consent, removed certain United States Steel stock certificates from the safety-deposit box and sold them. Plaintiff received $1000 from the proceeds of such sale. Another occurrence which bears upon plaintiff's knowledge of the securities owned by his mother

arises out of the following facts: In 1938, defendant was assisting his mother in her business affairs and the stock certificates, title papers and will were placed in his care. Plaintiff came to Joliet in April, 1939, and the inference is that he was not satisfied with the arrangement whereby the defendant was to handle the mother's property. He made some inquiry from the family lawyer and as a result defendant accompanied him to the bank and exhibited to him the contents of the safety-deposit box. The securities were in the box and the envelope which contained them bore the endorsement in the sister's handwriting showing the number of shares and the name of the corporation that issued them. Plaintiff's examination satisfied him, for when he returned to Minneapolis he wrote the lawyer to the effect that defendant had showed him the contents of the safety-deposit box, and that everything was satisfactory. The securities were listed on the stock exchanges.

Plaintiff initiated the transactions leading to the execution of the assignment. After two phone conversations with defendant, he talked with the family lawyer. The lawyer asked him if he understood the nature of the transaction, to which he replied in the affirmative. When plaintiff sought to negotiate with defendant in reference to obtaining money on his expectant interest, defendant knew that plaintiff, in the preceding February, had the opportunity of examining the contents of the safety-deposit box and could have ascertained the securities owned by the mother. Under such circumstances, it was not incumbent upon the defendant to repeat the facts as to the kind or amount of the securities owned by the mother.

Plaintiff contends he did not know that the title to the homestead property was in the mother's name. It was conveyed to her in 1921, and the record title remained in her name until her death. A codicil to the father's will devised all his right, title, and interest to the daughter, Mrs. Johnson, but he did not own the property. Plaintiff says the

provision in the codicil to the father's will misled him and caused him to believe that Mrs. Johnson was the owner. There is no evidence that defendant made any statements in reference to the ownership of the homestead property. On cross-examination, plaintiff was asked to explain what he conceived to be the purpose for inserting a clause in the contract in reference to the homestead property if the title was in Mrs. Johnson's name. His only reply was that he assumed it was to make it more secure and to protect defendant against any difficulty that might arise out of the father's will. The discussion plaintiff had with the family lawyer in reference to omitting the California property from the assignment and the inclusion of plaintiff's full expectant interest in the homestead is persuasive that plaintiff knew when he signed the contract that he had an expectant interest in the homestead by reason of his right to inherit or take under the will of his mother.

The valuation of Anna R. Dyblie's property at the time of the assignment was stipulated to be $31,000 for the securities and the value of the homestead was fixed at from $6500 to $7500. The debts of the estate, costs of administration and other charges were stipulated to be $5100. Plaintiff adopts these figures to sustain the theory that the consideration was grossly inadequate. Values of property to be transferred by a contract of this character must be fixed as of the time of the execution of the assignment and in light of the fact that it is only an expectant interest. It is not necessary in this case to point out all the events that might occur, any one of which would have prevented plaintiff's expectant interest from becoming a vested interest. It is sufficient to say that the risk attending the purchase of such an interest seriously affects the cash value of such an interest.

It is contended defendant stood in a fiduciary relationship to plaintiff. The mere fact that they were brothers does not establish a fiduciary relationship. (*Dougherty* v.

*Duckels,* 303 Ill. 490.) Its existence is not dependent upon the establishment of any particular relationship. It involves the idea of trust and confidence and may be found to exist in any legal relationship where special confidence is imposed on one side and domination and influence is on the other. (*Seely* v. *Rowe,* 370 Ill. 336.) Where it is sought to establish such a relationship by parol evidence the proof must be clear, convincing, and so strong, unequivocal and unmistakable as to lead to but one conclusion. *Bennett* v. *Hodge,* 374 Ill. 326.

The evidence in this case showed that defendant was older, that he was named as executor in the mother's will, and that he assisted his mother in her business affairs during the latter years of her life, but there is no evidence that plaintiff and defendant ever had any business transactions other than the one in question or that plaintiff reposed confidence in defendant or depended upon his advice and counsel in any matter. The evidence is in conflict as to what plaintiff said was his reason for making the assignment. Plaintiff testified he told the defendant that he had been ill for sometime and that he needed the money to re-establish himself in his professional work. Defendant said that plaintiff told him it was to be used in improving the conditions of his office. Whatever plaintiff's needs might have been, it is clear that plaintiff undertook on his own initiative to solve them by pledging or selling his expectant interest in his mother's estate. The evidence does not show a fiduciary relationship.

The decree is reversed and the cause remanded, with directions to dismiss the complaint for want of equity.

*Reversed and remanded, with directions.*