(No. 29274.—

Patrick Galvin, Conservator, Appellee, *vs.* George O'Neill, Admr., *et al.,* Appellants.

*Opinion filed March 20, 1946—Rehearing denied May 16, 1946.*

GEARY & STAGMAN, of Chicago, for appellants.

AARON SOBLE, and MAURICE H. HERMAN, both of Chicago, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The superior court of Cook county at the suit of Patrick Galvin, conservator of the estate of Henry Patrick Galvin, incompetent, entered a decree that Thomas Keady, deceased, in his lifetime did not have title in fee to certain real estate, consisting of a house and lot in Chicago, that his heirs and representatives had no greater right than he had, and that in his lifetime Thomas Keady held title to said real estate in trust for Henry Patrick Galvin, incompetent, and the court decreed the latter to own said real estate in fee simple, subject to the lien of any money due Keady's heirs or representatives upon an accounting.

The complaint upon which such decree was entered alleged in substance that Henry Patrick Galvin acquired a lot in 1921, and constructed a building thereon; that, in

the year 1936 and for several years before that date, there was outstanding a mortgage in the sum of $1500, and that in the year 1936 it was past due and unpaid; that Galvin was incompetent and in a government hospital, and had been incompetent since 1934; that there resided in said premises his father, Patrick Galvin, a sister Catherine, a sister Mary, wife of Thomas Keady, and Thomas Keady; that the said Thomas Keady bought said mortgage, and did not inform any of the Galvin family of such fact, and later foreclosed said mortgage, and obtained the title to the property without informing the family of Galvin; that the property was worth $7000; and that a fiduciary relationship existed between Thomas Keady and Henry Patrick Galvin, making it incumbent upon Keady to notify the family what he was doing, and had done, in order that the rights of Galvin could be protected. The conservator, plaintiff in this suit, was appointed shortly before commencing the suit. The prayer of the complaint was for the establishment of a trust, and offered to do equity by repaying whatever sums Keady had advanced. A motion to dismiss the complaint was made, and overruled by the court. We think this motion should have been sustained, but owing to the fact that the defendants answered, and the evidence was taken, the defect in the pleading is deemed to be waived, and cannot be taken advantage of by reason of section 42(3) of the Civil Practice Act.

The chancellor heard the evidence in open court, and, while he made no findings of fact, stated in an opinion that he based his decree upon the general picture, without relying upon the details of the evidence; that the picture disclosed whatever Keady did was done to preserve the property for the family, which required some very affirmative action by Keady to show the members of the family they were not going to have the property any more, and that it was going to be transferred to him. This rather unusual

view was prompted doubtless by the fact that Keady's wife, the sister of the incompetent, had died before Keady, without children, and when Keady died intestate the property would descend to the Keady heirs, to the exclusion of Galvin, and the enjoyment thereof by the Galvin family. The opinion of the court indicates the relief was not based upon any duty owed to Galvin, the incompetent, but one which Keady owed the family.

The evidence shows the mortgage was six months in default; that certain special assessments were unpaid, and that the mortgagor was demanding payment of Patrick Galvin, father of the incompetent; that there were second mortgages on the property amounting to $450. The parties all lived in the house. After these demands were made upon Patrick Galvin, Keady called upon the mortgage company, and it was suggested that he purchase the mortgage, as the mortgagee feared the security and would not extend the agreement without the making of a payment upon principal. The mortgage company wrote Keady the terms upon which it would sell the mortgage, and would also make him a collateral loan upon it to make up for any lack of cash he might have to make the purchase. This letter was shown to Patrick Galvin, and he answered it, saying the agreement with Keady would be "a conclusion satisfactory to all concerned." The mortgage was purchased by Keady. He paid $1100 in cash and borrowed $450 from the mortgage company, with the note and mortgage as collateral, and paid that. He brought foreclosure, summoned Patrick Galvin, had a guardian *ad litem* appointed, and obtained title at foreclosure sale. The property was transferred to Keady's name on the tax books. He made some improvements to the buildings, including a new roof costing $1150, and remained in possession until his death on October 30, 1943.

There is not a single word of evidence of any transaction between Thomas Keady and Henry Patrick Galvin,

the incompetent. In fact, there is no evidence they ever lived together in the same house, as Galvin was injured and removed to a hospital before Keady moved into the premises, and has been in a hospital continuously since that time. There is no allegation of facts indicating a fiduciary relationship between Keady and Henry Patrick Galvin, except the allegation they were brothers-in-law, Keady having married Galvin's sister. The court does not find in its decree, or in its opinion, that a fiduciary relationship did exist, but indicates that because Keady was a policeman the family regarded him as a person of knowledge and authority. Nowhere is any duty to Galvin, the incompetent, discussed, but only an alleged duty to preserve the property for the family, and a statement that an affirmative duty existed to the family to show that the incompetent was not going to have the property any more. That is also the theory upon which plaintiff bases his prayer for relief.

There are two reasons why the decree should be reversed: (1) No authority is shown, and we know of none, that invalidates a foreclosure decree because of a failure to disclose to the relatives of a mortgagor an intention to foreclose. They are not owners, and in the eyes of the law are not interested. (2) The proof shows conclusively that Patrick Galvin, the father of the incompetent, and his two daughters, knew of the proposed purchase of the mortgage by Keady, and advised the mortgage company that it was satisfactory to all concerned. Those concerned could mean no other than the father, the two sisters and Keady. Afterwards, within a year, a new roof and other improvements costing over $1100 were put upon the house by Keady, conclusively showing ownership. And, even despite the denials, these facts would show beyond question that the family for whom so much concern is shown actually knew of the purchase and the ownership of the property, in addition to the presumption of knowledge

brought about by the recording of the deed and the changing of the name upon the tax records. Had Keady lived we are unable to see how the family could have successfully maintained the suit against him.

The complaint here is on behalf of the incompetent, but the allegations are a supposed duty towards the family, and the breach of duty in failing to notify the mortgagor, and in failing to notify the family of the mortgagor, the purchase being for the purpose of preserving it for the family, as the court remarked: "this whole picture, whatever he did, was to preserve the property for the family." No authority is offered by appellee to sustain the declaration of a constructive trust under such circumstances. The relation of mortgagee and mortgagor in itself is not a trust relationship; neither is that of brother and sister, (*Dyblie* v. *Dyblie,* 389 Ill. 326;) nor kinship alone, (*Finney* v. *White,* 389 Ill. 374;) nor of brother-in-law, (*Perry* v. *McHenry,* 13 Ill. 227.) In *Dick* v. *Albers,* 243 Ill. 231, we held a son had the same right as a stranger to buy and foreclose a mortgage made by a father, though under conservatorship.

Where a fiduciary relationship does not exist as a matter of law the relationship must be proved by clear and conclusive evidence, where it is claimed as a basis to establish a constructive trust. (*Neagle* v. *McMullen,* 334 Ill. 168; *Dyblie* v. *Dyblie,* 389 Ill. 326.) If a fiduciary relationship had in fact been proved to exist between Keady and Henry Patrick Galvin, some basis of equitable relief by way of redemption might be decreed under special circumstances. (*Totten* v. *Totten,* 294 Ill. 70.) Such proof, however, is wholly lacking, and where there is no proof of fiduciary relationship equity will not relieve from foreclosure because of the family relationship alone. In the *Albers case* it was held that where there is no question of fraud, undue influence or breach of confidence, involved

in the purchase by a son of the note and mortgage of the father, the latter's mental condition has no bearing upon the inquiry whether the transaction shall be declared a constructive trust.

Appellee contends the difference between the amount invested by Thomas Keady and the value of the property is so great as to shock the conscience and to indicate fraud. We do not think the principle applies where it involves a sale under foreclosure, which is subject to redemption, as, of course, title can be obtained whether the mortgage is great or small, if the mortgagor fails to make the payments required. In order for inadequacy to be considered a basis of fraud it must be accompanied by circumstances showing overreaching, oppression, or undue influence, or similar circumstances, which prevent the parties from contracting upon substantially equal terms; but inadequacy alone is not regarded as being a sufficient basis of fraud to set aside a legal transaction. *Dyblie* v. *Dyblie,* 389 Ill. 326; *Finney* v. *White,* 389 Ill. 374.

Moreover, we do not regard the evidence as disclosing a disproportion between the value and the investment. One supposed expert testified as to the value of the property. He was 29 years old at the time of the testimony, and consequently was 19 years old at the time the transaction occurred by which Keady obtained the mortgage. This witness did not know the value of the property at that time, and finally, on cross-examination, fixed a value of approximately $4500. He admitted the company for which he acted would not loan upon the property with the owner incompetent, nor would a loan be made if the father joined in as security. The mortgage holder was doubtful about his security, and would not renew the mortgage. If all of the value was present, as claimed by this witness, it seems strange a six-per-cent mortgage could not have been extended. Keady paid $1500 for the mortgage; accrued

interest $45; improvements $1150; and there yet remained an outstanding mortgage of $450; a total of $3145 against the property, without foreclosure costs. In our opinion if this were a case in which inadequacy would be a material element, the evidence does not disclose it. The value of the property at the time of bringing suit is not material. *Scott* v. *Harris*, 113 Ill. 447; *Dyblie* v. *Dyblie*, 389 Ill. 326.

It is also claimed Keady concealed his ownership from the family. No authority has been cited showing the materiality of this fact, if true. As we pointed out above, the family did know he purchased the mortgage, and was bound to know he owned the property from the fact that extensive improvements occurred while they were inhabiting the place. If any evil inference could be drawn from the fact of concealment, if proved, it has not been shown by competent evidence. It comes principally from his former attorney. It is not given to aid in construing a will, but was given in aid of strangers to the title, and to take the property from the Keady heirs, for the benefit of the Galvin heirs. Had Keady been alive and defending against the conservator it would have been utterly incompetent. (*Scott* v. *Harris*, 113 Ill. 447.) It is not made competent by his death.

The only other witness is a brother policeman, who testified that shortly before Keady's death the latter said he would put the Galvins out if he wanted to and rent the premises, although the Galvins did not know he held the master's deed, and he saw no reason why they should be informed. We may speculate as to the reason why he kept his wife's family ignorant, but since he owed them no duty as a family it is wholly immaterial and certainly insufficient to raise a trust in their favor. In this regard there is total lack of evidence of fraud or proof of a fiduciary relationship, or breach of any duty owed to the plaintiff. The claim of a duty to the family is not sustained by any proof or any authorities to the effect that

a duty to tell the family would result in a right to redeem,' or as a discharge of the indebtedness by the incompetent.

There is no showing by the plaintiff that the property could have been redeemed, or that a new loan could have been negotiated. The facts disclose that as long as Keady lived and permitted the family to live in the house no questions arose, but when first his wife and then Keady died, with the result that the Keady heirs and not Galvin or his family would enjoy the premises, this supposed duty and equity arose. If the father and sister of Galvin were so concerned, they had the same notice of Henry Patrick Galvin's inability to pay the mortgage that Keady had, and inquiry would have disclosed all facts, but even then they would have had no right to redeem, as being neither defendants to the lawsuit nor creditors of Galvin, the incompetent.

In addition to the foregoing, the appellee has taken the extremely inequitable position that, in spite of offering in his complaint to reimburse the Keady estate for all advancements made as a condition of relief, an accounting should now be denied to the family of Galvin, and that Galvin retain the property free from obligation to account. This position is not in keeping with the contentions made of the existence of a trust. There is no authority sustaining it.

It is our conclusion that a case was neither stated in the complaint nor shown by the evidence, but on the contrary the proof discloses the complaint should have been dismissed for want of equity. The judgment and decree of the superior court of Cook county is accordingly reversed, and the cause is remanded, with directions to dismiss the plaintiff's complaint.

*Reversed and remanded, with directions.*