BANKERS TRUST COMPANY OF NEW YORK, LILLIAN F. STEWART AND HARRY L. BULL, EXECUTORS AND TRUSTEES UNDER THE WILL OF CHARLES FAUPEL, LATE OF THE COUNTY OF HUDSON, PLAINTIFFS, v. BERTRAM F. CRANE, CHARLES F. CRANE, WILLIAM F. CRANE, CHARLES M. MAY, ADMINISTRATOR OF THE ESTATE OF HARRIET B. CRANE, DECEASED, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided October 27, 1961.

448

*Mr. William E. Decker,* attorney for plaintiff.

*Mr. Henry Ewald, Jr.,* attorney for defendant Bertram F. Crane.

*Mr. Louis E. Saunders,* attorney for defendants Charles M. May, administrator of the estate of Harriet B. Crane, deceased, Charles F. Crane and William F. Crane.

COLLESTER, J. S. C.    The plaintiffs, Bankers Trust Company of New York, Lillian F. Stewart and Harry L. Bull, executors and trustees under the will of Charles Faupel, deceased, bring this action seeking instructions from the court as to the performance of their duties with respect to the provisions of said will based upon a question arising from a property settlement made in a divorce case by Bertram Crane, one of the beneficiaries under said will. The pertinent facts are as follows:

The defendant, Bertram Crane was married to Harriet Crane on August 22, 1925 and two children were born of the marriage, Charles F. Crane and William F. Crane. In 1946 while the Cranes were residents of the State of Illinois, Harriet Crane instituted a suit for separate maintenance against her husband and pending the hearing thereon entered

into a property settlement agreement, dated March 4, 1946, which provided, *inter alia,* as follows:

"It is further agreed by and between the parties hereto that the wife shall be entitled to one-half of any property that the husband *may acquire by inheritance, devise or bequest* and the husband does hereby assign to the wife an undivided one-half interest in any property, whether real, personal or mixed *that he may at any time in the future inherit or receive by devise or bequest* from his mother or from any other person whatsoever, excepting any future spouse and her relatives, and the husband will *deliver* to the wife the said one-half interest immediately *upon his coming into possession of any property as aforesaid."* (Emphasis added)

Thereafter Mrs. Crane amended her suit to one for absolute divorce, and on March 12, 1946 a decree of divorce was entered in the Circuit Court of Cook County, Illinois, which provided, *inter alia:*

"It is further ordered, adjudged and decreed that plaintiff shall be entitled to one-half (½) of any property, real, personal or mixed, that defendant may *at any time in the future acquire by inheritance* from his mother or from any other person whatsoever, excepting any future spouse and her relatives, and that the defendant *deliver* to plaintiff the said one-half (½) interest immediately *upon his coming into possession of any property as aforesaid."* (Emphasis added)

On July 16, 1951 Bertram Crane and Harriet Crane entered into a stipulation which was filed in the Illinois court and which provided that Crane pay $5,000 to Harriet Crane in full settlement of all alimony, past, present and future. Said stipulation further provided that the aforesaid provision with reference to expectant future interests of Bertram Crane would remain in full force and effect.

Charles Faupel, the decedent, an uncle of Bertram Crane, died a resident of Jersey City on February 27, 1959, leaving the will in question which was duly probated on March 10, 1959.

After making certain specific bequests in said will the testator directed that his residuary estate be divided into two equal parts. He gave to the defendant, Bertram Crane, a one-eighth part of one of said equal parts.

The other equal part the testator devised and bequeathed to his executors as trustees to be set aside as a trust fund, with directions to pay out of the income and principal thereof such monies as might be needed to provide for the support, maintenance and medical care of his sister, Anna F. Crane (Bertram Crane's mother). No payments were to be made from such trust fund until Anna F. Crane had first exhausted all of her own money.

The will further provided that upon the death of Anna F. Crane, seven-eighths of said equal part would be divided into seven parts and one of said seven parts would be paid over to Bertram Crane—"or in the event of his death prior to receiving said payment, then to his heirs-at-law."

The will further provided that the one-eighth remaining of said equal part would be held by the testator's trustees to pay over the income thereof to testator's nurse, Anne C. Phillip, during the term of her natural life. Upon the death of Anne C. Phillip, said trustees were to pay over the *corpus* thereof to named beneficiaries—a one-seventh interest thereof to go to Bertram Crane. The will provided that in the event Bertram Crane died before Anne C. Phillip his interest therein would be paid over to his heirs-at-law, *per stirpes*.

Harriet Crane, Bertram Crane's divorced wife, died on March 12, 1959, intestate, 14 days after the death of the testator, Charles Faupel, and two days after the probate of his will. Letters of administration were granted to the defendant, Charles M. May, by the Probate Court of Cook County, Illinois. She was survived by the two children of her marriage to Bertram Crane, namely, the defendants, Charles F. Crane and William F. Crane, both of whom are now of full age and emancipated.

Anna F. Crane, mother of the defendant, Bertram Crane, and the beneficiary of the trust created on her behalf by the testator, died February 7, 1961, leaving a will whereunder her son, Bertram Crane, was named executor.

Anne C. Phillip, who received the life estate above set forth, is still alive.

Both Bertram Crane and Charles May, administrator of the estate of Harriet Crane, deceased, claim to be entitled to the money due and to become due under the provision of Dr. Faupel's will, and plaintiffs as executors and trustees seek instructions and a determination of the issues in this proceeding.

At the oral argument had upon this matter it was conceded by all parties that the one-eighth share of one equal part of decedent's residuary estate bequeathed to Bertram Crane was subject to the provisions of the divorce decree and the supplemental stipulation thereto entered in the Illinois court, since Harriet Crane had survived the decedent, Charles Faupel, and hence one-half of the share of said bequest should be paid over by the decedent's executors to the administrator of the estate of Harriet Crane, deceased.

The unresolved issues concern the rights of Bertram Crane and Charles May, administrator, in and to (1) the bequest to Bertram Crane in said will which became effective upon the death of Anna F. Crane, the life beneficiary, who died on February 7, 1961, but who had survived Harriet Crane, and (2) the bequest to Bertram Crane in said will which will not be payable to him until after the death of the life tenant, Anne C. Phillip, if he survives her—said Anne C. Phillip being still alive.

The defendant, Charles May, administrator &c., contends that the "agreement" on the part of Bertram Crane to deliver to Harriet Crane one-half of certain future interests upon his coming into possession thereof, as set forth and incorporated in the decree of divorce dissolving the Crane marriage should be enforced by this court. His contention is that such an assignment of future interests is valid in Illinois and enforceable there in a court of equity, and since the "agreement" must be construed under the law of Illinois, this court should direct that one-half of the bequests

acquired by Bertram Crane should be paid over to Harriet's estate.

He further contends that the provision granting Harriet Crane a one-half interest in Bertram Crane's future interests was not given in lieu of alimony and support and that such "agreement" is binding upon Bertram Crane during his lifetime even though Harriet Crane is now deceased.

The defendant, Bertram Crane, contends that the "agreement" was incorporated in the divorce decree as a property settlement supplementing the monthly allowance required to be paid to Harriet Crane as alimony, and that it is implied that the same should terminate on the death of Harriet Crane. He further contends that the bequests to him under the will which were subject to the life estates of Anna F. Crane and Anne C. Phillip had not been "acquired" nor had they come into his *possession* in accordance with the terms of the "agreement" on the date of death of Harriet Crane, and that it was never the intent of the parties that such future interests should be paid over to Harriet Crane's estate after her decease.

One question is—was the provision in the divorce decree, ordering that Harriet Crane shall be entitled to one-half of any property that Bertram Crane may at any time in the future acquire by inheritance, a contract which should be enforced by this court? Defendant, Charles May, administrator, cites the case of *Dyblie v. Dyblie,* 389 *Ill.* 326, 59 *N. E.* 2d 657 (*Sup. Ct.* 1945) as authority for his position.

█ *Dyblie, supra,* was an action between two brothers based upon a written agreement assigning and conveying the future expectant interest of one to the other for a valuable consideration. The court stated (59 *N. E.* 2d, at *p.* 659) :

"The law is that where the expectancy of an heir presumptive is assigned or conveyed to another person, the assignment, if fairly made and for a valuable consideration, will be enforced in equity."

The same rule is followed by our courts in New Jersey. See *Bacon v. Bonham,* 27 *N. J. Eq.* 209 (*Ch.* 1876), affirmed 33 *N. J. Eq.* 614 (*E. & A.* 1881); *Brindze v. Atlantic City Policemen's Beneficial Ass'n,* 75 *N. J. Eq.* 405 (*Ch.* 1909), affirmed 77 *N. J. Eq.* 272 (*E. & A.* 1910); *Fidelity Union Trust Co. v. Reeves,* 96 *N. J. Eq.* 490 (*Ch.* 1924).

However, it is the opinion of this court that the provision relating to the assignment of one-half of Crane's future interests is not governed by the rules above set forth.

◼ In determining enforceability of the agreement, two opposing bases of analysis are apparent—*contract* and *status.* Fundamentally, duties arising out of a contract are solely the creation of the parties, judicial action generally being limited to enforcement of its terms by dispensation of appropriate remedies within the general framework of the intention of the parties. *Verhagen v. Platt,* 1 *N. J.* 85 (1948); *Harker v. McKissock,* 7 *N. J.* 323 (1951); *Smith v. Metropolitan Life Ins. Co.,* 29 *N. J. Super.* 478 (*App. Div.* 1954); *Hollister v. Fiedler,* 22 *N. J. Super.* 439 (*App. Div.* 1952). Status, on the other hand, although it may be created by the intention of the parties, proceeds differently, the focal point being the rights and duties imposed by the *status* rather than those imposed by the "intention of the parties." 14 *Rutg. L. Rev.* 198 (1959–60).

◼ Traditionally, it has been thought that marriage created a status, for, although it is entered into by way of consent, it cannot be dissolved that way, and the legal condition created by it is determined by the law and cannot be modified by the agreement of the parties. In 10 *N. J. Practice* (*Herr, Marriage, Divorce, and Separation*) (*2d ed.* 1950), *sec.* 21, *pp.* 12–14, it is stated:

"Marriage is something more than a contract. True it is that the consent of the parties is essential, but when the contract to marry is executed by the marriage, a relation or status between the parties is created which they cannot alter. While other contracts may be modified, restricted, enlarged or entirely abrogated by consent of the parties, once the marriage relation is formed the law steps in

and holds the parties to sundry obligations from which there is no escape unless and until the state modifies or dissolves the status by proceedings sanctioned by law."

In *Phillips v. Phillips,* 119 *N. J. Eq.* 462 (*E. & A.* 1935), the court said, at *p.* 463:

"In *Apfelbaum v. Apfelbaum,* 111 *N. J. Eq.* 529, this court said that jurisdiction of the court of chancery over the matter of alimony not only exists while that relation persists, but by the express language of the Divorce Act (*Comp. Stat. p.* 2035, *sec.* 25), continues after decree of divorce; and it necessarily includes the power, in cases where the wife is entitled to alimony, to regulate the amount of such alimony from time to time, to supervise agreements between the parties in that regard, to enforce them if deemed just, and to decline to recognize them otherwise. *Calame v. Calame,* 25 *N. J. Eq.* 548. *But these powers grow out of the existing or pre-existing marital status, and are not controlled by the rules of specific performance of contracts.* The bill in this case being framed as a bill of specific performance was properly dismissed as such * * *."

See also *Second Nat. Bank of Paterson v. Curie,* 116 *N. J. Eq.* 101, at *p.* 110 (*E. & A.* 1934); *Corbin v. Mathews,* 129 *N. J. Eq.* 549, at *p.* 554 (*E. & A.* 1941); *Friedman v. Friedman,* 142 *N. J. Eq.* 685 (*E. & A.* 1948). That the provision relating to the assignment of future interests was considered as a part of the property settlement of alimony and support for the wife is shown by the testimony of Mrs. Crane at the divorce hearing at which she was asked:

"Q. You are willing to settle on this basis and make no further claim against your husband—except what is in the agreement? A. Yes."

It is my opinion that the relief sought by Charles May, administrator, as a breach of a contractual obligation cannot be enforced in equity. This agreement arose out of the *status* between the parties—a status of husband and wife —which became incorporated in and a part of the judicial decree of divorce. The provision for an assignment of possible future interests of Bertram Crane was part of the

property settlement—a settlement which supplemented the terms of alimony provided for in the decree.

In my judgment the agreement which became part of the divorce decree terminated upon the death of Harriet Crane. It was so intended by the parties. Nothing appears in the decree which indicates that this provision should survive the death of the wife. This case differs from *Flicker v. Chenitz*, 55 *N. J. Super.* 273 (*App. Div.* 1959), and *MacFadden v. MacFadden*, 46 *N. J. Super.* 242 (*Ch.* 1957), both of which clearly indicated that the agreements involved should survive a deceased spouse.

Here Harriet Crane was entitled to receive, under the terms of the divorce decree, one-half of the bequest contained in the decedent's will which was fully vested in and possession acquired by Bertram Crane during her lifetime. However, Bertram Crane did not acquire an inheritance in which he had the right to possession or the power to deliver over in the other two bequests which were subject to the life tenancies of Anna F. Crane and Anne C. Phillip. In each of the latter bequests, Crane's right to said inheritance was contingent upon his survival of the life tenant.

Unquestionably, the intention of Harriet Crane and Bertram Crane was to limit the right to such an inheritance to the wife during her lifetime. There is nothing in the terms of the decree to indicate that the heirs at law or next of kin should receive a share in the future interests received by Bertram Crane. The provision was to supplement alimony and terminated upon the death of Harriet Crane. It is impossible to conclude, as urged by the administrator of Harriet Crane's estate, that now and thenceforth so long as Bertram Crane lives, one-half of any future interests acquired by him, should be paid over to the heirs at law or next of kin, aforesaid.

It is the judgment of this court that the two bequests to Bertram Crane, which were subject to life tenancies at the death of Harriet Crane, should be paid over to Bertram Crane and that the administrator of the estate of Harriet Crane has no interest therein.